# Williams et al. *v.* Ladew et al., trading as Fayerweather & Ladew, Appellants.

*Waters—Interference with subterranean flow—Damages.*

An injury caused to a subterranean supply of water by the lawful acts of an owner of land is damnum absque injuria, unless the stream is well defined and its existence known or easily discernible, or unless the injury be caused by negligence or malice.

*Preliminary injunction—Water tunnel.*

A court of equity will not award a preliminary injunction to restrain the construction of a tunnel by defendants upon their own land for the purpose of procuring a supply of water for a tannery, where the bill and plaintiffs' affidavits show merely an apprehension that defendants' purpose is to unlawfully divert water to which plaintiffs claim the exclusive right.

and there is no averment of a belief that defendants intend any excavation outside their own land.

Argued Jan. 26, 1894.   Appeal, No. 118, Jan. T., 1894, by defendants, Edward P. Ladew et al., trading as Fayerweather & Ladew, from decree of C. P. Bedford Co., awarding preliminary injunction on bill in equity by plaintiffs, Harvey C. Williams et al.   Before STERRETT, C. J., WILLIAMS, McCOLLUM, MITCHELL and DEAN, JJ.   Reversed.

Bill to restrain construction of water tunnel.

The bill averred that in 1869 a tunnel was constructed in plaintiffs' land for the purpose of mining coal, and that a considerable stream of water began to flow through said tunnel, the sources of which stream were various unknown underground currents which were intersected and collected by said tunnel; that prior to 1892, defendants leased water from said tunnel for the use of their tannery, known as the Tecumseh tannery; that on Feb. 20, 1893, defendants applied for and received a permit from the borough of Everett to dig a tunnel under West street to carry water to their tannery; that thereafter they began the construction of said tunnel.

" The plaintiffs are informed and believe, and therefore aver, that the object of said new tunnel is to intersect the tunnel hereinbefore described, or the waters of the stream therein, at a point westwardly from plaintiffs' line; and thereby to create a new water way, and to divert thereto, from the plaintiffs' land, the water now flowing in the said tunnel stream, and to cause said water to flow in and through said new tunnel, upon the land of Edward R. and Joseph H. Ladew, to the said Tecumseh tannery.   Such intersection of the existing tunnel, and diversion therefrom of the stream now flowing through the same, or of any portion thereof, for the use of said tannery, would, if carried out, cause plaintiffs great loss and damage, and inflict upon them irreparable injury, contrary to equity, and for which they have no complete or adequate remedy at law."

The bill prayed for an injunction preliminary until hearing and permanent thereafter.   The court awarded a preliminary injunction, which was continued until final hearing.

*Error assigned* was above decree.

*Alexander King*, for appellants.—Acting without malice or negligence, defendants have a clear legal right to search for and obtain water on their own lands by excavations or tunnels, and if perchance a stream on a neighbor's land is interfered with and a loss arises, it is damnum absque injuria : Haldeman v. Bruckhart, 45 Pa. 520; Lybe's Ap., 106 Pa. 626; Arden v. Pullen, 12 M. & W. 324; Wheatley v. Baugh, 25 Pa. 528; Chartiers Block Coal Co. v. Mellon, 152 Pa. 286.

There is no averment in the bill that plaintiffs own or have any right to the tunnel or the stream, or the water which they "are informed and believe and therefore aver that appellants intend to intersect and take from them."

In Patterson's Ap., 129 Pa. 109, on hearing on bill, answer and affidavits, this court refused an injunction because, on the hearing of the motion, it appeared that neither the title to nor possession of the property in dispute was in plaintiff, and said that the obstacle in the way of continuing the preliminary injunction was that defendant not only denied plaintiff's title, but alleged that title was in it. Where rights which are legal are asserted on one side and denied on the other, the remedies are at law.

As the answer is completely responsive to every substantial averment in the bill, there is nothing on which an injunction can rest: Crombie v. Order of Solon, 157 Pa. 588.

*Harvey C. Williams, Kerr & McNamara, Frank Fletcher* and *James S. Williams* with him, for appellees.—An interlocutory injunction will not be dissolved unless defendants deny the material allegations of the bill with the same clearness and certainty with which they are charged: Story's Eq. Pl. §§ 605–609, 845–847; High on Inj. §§ 1470–1475, 1513–1518; Rhea v. Forsyth, 37 Pa. 507; 10 A. & E. Ency. L. 1018; Ry. v. Clarion Land Co., 54 Pa. 39; Dreydopple v. Young, 37 Leg. Int. 397; Patterson's Ap., 129 Pa. 109; Crombie v. Order of Solon, 157 Pa. 588; Galland v. Butler Coal Co., 4 Kulp, 406.

Defendants will not be permitted to set up another title adverse to that of plaintiffs, or to impair the fee of which they are tenants: 1 Washburn's R. P., 5th ed. 499; 10 A. & E. Ency. L. 819; 2 Story's Eq. Jur. 917, 919; Wood's Landlord and Tenant, 425; Allison's Ap., 77 Pa. 221; Smith's Ap., 69 Pa. 474; Grubb's Ap., 90 Pa. 234.

The law of water courses establishes plaintiffs' right to have this stream flow to their lands in its present course and volume: Wheatley v. Baugh, 25 Pa. 530; Haldeman v. Bruckhardt, 45 Pa. 519; Lybe's Ap., 106 Pa. 634; Chasemore v. Richards, 7 H. L. C. 349; Johnson v. Jordan, 2 Met. 239; Seibert v. Levan, 8 Pa. 383; Sanderson v. Coal Co., 86 Pa. 406; Shenandoah Co.'s Ap., 2 W. N. 46; Chartiers Coal Co. v. Mellon, 152 Pa. 300; Washburn's Easements, 4th ed. 310, 316, 327, 346, 440; Angell's Watercourses, §§ 5, 8, 90–99*a*, 112 A. & B., 206; Sutcliffe v. Booth, 32 L. J. Q. B. 136; Arkwright v. Gell, 5 M. & W. 203; Gaved v. Martyn, 19 C. B. N. S. 732; Beeston v. Weate, 5 E. & B. 986; Broadbent v. Ramsbotham, 11 Exch. 610; Ivimey v. Stocker, L. R. 1 Ch. Ap. 396; Magor v. Chadwick, 11 A. & E. 169; Frey v. Witman, 7 Pa. 440; Whetstone v. Bowser, 29 Pa. 59; Reading v. Althouse, 93 Pa. 405; Nuttall v. Bracewell, L. R. 2 Exch. Cas. 1; Race v. Ward, 30 Eng. L. & Eq. 187; Pratt v. Lamson, 2 Allen, 275; Gould on Waters, §§ 206–9, 213–215, 218, 245 and notes, 281, 299, 536 and note; Wheatley v. Chrisman, 24 Pa. 298; R. R. v. Miller, 112 Pa. 40; Clark v. R. R., 145 Pa. 449; Dudden v. Clutton Union, 11 H. & N. 627.

The right to equitable interposition in the premises is fully established: Masson's Ap., 70 Pa. 26; Miller v. Lynch, 149 Pa. 460; Patterson's Ap., 159 Pa. 109; Corning v. Troy Iron and Nail Factory, 40 N. Y. 191; High on Inj. § 897; 2 Story's Eq. Jur. §§ 901, 926, 927; Gould on Waters, §§ 507, 513, 519.

The equitable position of appellants called for and will maintain this injunction: Haight v. Lucia, 36 Wis. 356; Beach's Eq. Jur. § 14; High on Inj. §§ 679, 1474.

The decision of the common pleas will not be disturbed except in case of a clear abuse of the discretion which the law intrusts to it: Beach's Eq. Jur. § 646; High on Inj. §§ 1693–1696.

OPINION BY MR. JUSTICE DEAN, April 30, 1894:

In the year 1893, the defendants, who operate a large tannery near Everett, Bedford county, began the construction of a tunnel upon their own land to procure a supply of water for their tanning operations. The plaintiffs thereupon filed this bill, averring that they are informed and believe that the object

of defendants in constructing the new tunnel is to intersect a
water-way tunnel upon their land, and to divert the water from
this last mentioned tunnel to defendants' use, to the damage
of plaintiffs, and praying for an injunction to restrain the de-
fendants from further work upon the tunnel upon their own
land.  The court below granted a temporary injunction, which,
upon hearing, it refused to dissolve, thus restraining defend-
ants from further work, until final hearing and decree.  This
appeal is from the refusal to dissolve the preliminary injunc-
tion.

For obvious reasons, on this appeal from an interlocutory de-
cree, it would be improper for us to express any opinion on the
disputed facts in the issue.  But taking the undisputed facts
as they appear by bill, answer and affidavits, defendants, as yet,
have not touched and do not intend, in the construction of
their tunnel, to touch other than their own lands.  The pro-
curing of a water supply is absolutely necessary to the exist-
ence of their tannery business, in which they have invested a
very large amount of money.  The averments, in the bill and
in plaintiffs' affidavits, at best, show an apprehension that de-
fendants' purpose is to unlawfully divert water to which plain-
tiffs claim the exclusive right; for they do not aver a belief
that defendants intend any excavation outside their own land.

Under such a state of facts, we think plaintiffs' right to an
injunction, pending hearing, was very doubtful, because plain-
tiffs' right to restrain defendants' operations on their own land
is far from clear.  The strong arm of an injunction should not
be exercised unless in cases of clear right or great wrong, with-
out remedy at law.

True, the plaintiffs aver the construction of this tunnel upon
defendants' own land will tap subterranean streams, which now
flow into plaintiffs' tunnel.  But it does not necessarily follow
that even this would violate a right of plaintiffs.  In Lybe's
Appeal, 106 Pa. 626, a case in which Lybe prayed for an in-
junction to restrain one Herr from digging a well upon his own
land, whereby a subterranean flow of water would be cut off
from a certain spring to which plaintiff had a right, there was
a most thorough examination of the whole subject, and a review
of the law in this state and in England, it was decided: " That
the owner of land is not entitled to recover for injuries to wells

and springs situated thereon, if caused by the acts of the adjoining owner, if done in the exercise of his lawful rights on his own soil, and if such rights are exercised without malice or negligence." It is further held that, as to subterranean waters, "The great preponderance of authority supports the doctrine that an injury caused to a subterranean supply of water by the lawful acts of an owner of land, is, unless the stream be well defined and its existence known or easily discernible, or unless the injury be caused by negligence or malice, damnum absque injuria." It is said in this case, that the question was first discussed at length in Wheatley v. Baugh, 25 Pa. 528. In the case last named, it appeared that Baugh, the plaintiff, occupied about an acre of ground on which he carried on a tannery; he procured his supply of water for tannery purposes from a spring upon his own land. The defendant, for the purpose of mining copper ore upon the land adjoining, at the distance of 550 yards from Baugh's spring, sank a shaft, which, while operated, stopped the subterranean flow into the spring. This court decided against the plaintiff on the ground that the source of the spring was percolations, and the interruption of these was no cause of action. But the Court says: "We have treated the stream as depending on percolations alone at the point where mining operations are carried on; because the evidence does not show that any distinct water-course leading to it has been cut off. If this should be shown, and it should also appear that it could have been preserved without material detriment to the owner of the land through which it flowed, the destruction of it might be attributed to malice or negligence."

In Haldeman v. Bruckhart, 45 Pa. 514, it is decided: "That a proprietor of land may, in the proper use of his land for mining, quarrying, building, or any other useful purpose, cut off or divert subterraneous water flowing through it to the land of his neighbor, without any responsibility to that neighbor." We have called attention to the law as stated in these cases, because counsel for both parties cite and rely on these cases.

The plaintiffs aver that defendants' construction of a tunnel on their own land will tap subterranean waters under that land, which now run into a defined stream on plaintiffs' land. But this stream, in the most favorable view, is no better defined than Lybe's spring, in the case cited, the subterranean flow to

which was cut off.   Besides, it is disputed that the stream on plaintiffs' land is such a natural stream, the flow of which cannot be lawfully diminished by them as adjoining owners; but putting aside this question, the defendants have the right to construct a tunnel upon their own land to obtain a water supply from percolations or subterranean flow upon that land, so long as their operations are not negligently or maliciously conducted; or if defendants attempt to interfere directly with the body of water in the stream on plaintiffs' land, before the determination of their right, the Court may properly, on application, restrain such interference.   But so long as their operations are confined for a useful purpose to their own land, we think at this stage of the case they should not be restrained by injunction.

Therefore the decree of the court below continuing the injunction is reversed at the costs of the appellees, and the injunction is dissolved, so far as it restrains defendants from necessary and useful operations on their own land.