Zimmerman *v.* Union Paving Company, Appellant.

374

Argued December 14, 1938.

Before Keller, P. J., Cunningham, Baldrige, Stadtfeld, Parker and Rhodes, JJ.

*John Kennedy Ewing, 3d,* of *Saul, Ewing, Remick & Saul,* with him *Wesley K. Woodbury,* for appellant.

*J. L. N. Channell,* with him *H. O. Bechtel,* for appellee.

Opinion by Stadtfeld, J., January 31, 1939:

This is an appeal by defendant from the judgment entered on a verdict in favor of plaintiff for damages alleged to have been sustained as a result of the destruction of a spring.

For many years, William C. Umbenhauer owned a large tract of land in Pine Grove Township, Schuylkill County. In September 1923, he conveyed by warranty deed, a small portion of this tract being 200 feet square, to the plaintiff. The deed from Umbenhauer gave the plaintiff the right to conduct water from "Lutz's

Spring" (situate on property retained by Umbenhauer)
to the plaintiff's property through a two-inch pipe and
also the right to get water at another spring located on
Umbenhauer's property near the tract conveyed to the
plaintiff.

The plaintiff, in the exercise of the right conferred
upon him in said deed, installed a pipe line from "Lutz's
Spring" to his house and used the water for domestic
purposes. In addition, the plaintiff erected a fountain
or refrigerator near his house and conducted water to
it through a pipe line from a small spring on the Um-
benhauer property about 300 yards away.

In 1932, the Union Paving Company, defendant and
appellant, having a state road contract in the neighbor-
hood, acquired from William C. Umbenhauer the right
to excavate and remove soil from Umbenhauer's land
for the purpose of constructing shoulders on the road.
A few months previously, the State Highway Depart-
ment had done preliminary work on the road and had
removed some earth from Umbenhauer's land for its
own purposes which, however, had not injured the
spring. The place of this excavation is referred to
throughout the testimony as the "borrow pit." It was
situated close to the unnamed spring from which Zim-
merman was obtaining water. The spring was on the
top of a hill or bank and the borrow pit at the base
of it. Zimmerman, fearful of the damage which might
result to the spring from further excavation, went upon
the ground with Mr. Dougherty, defendant's superin-
tendent in charge of the work, showed him the spring,
his right to it and the use made of it, and warned him of
the danger of damage, whereupon Mr. Dougherty as-
sured him that defendant would be responsible for all
damages caused by their operation. These parties came
together in negotiations for the use of the right of way
belonging to Zimmerman. The face of the previous
excavation showed some seepage before the start of the
work, an indication of the danger from further excava-

tion. The defendant proceeded with the work but a short time, first removing a layer of clay' and then coming to shale, whereupon the water from the spring came through the face of the excavation at a point 6.62 feet lower than the spring, and the spring became dry. This was 34 feet from the spring. Some use has been made of this water since, but it must be carried in buckets 300 feet to the house and can no longer be carried there through a pipe line. The present action of trespass was brought to recover damages for the interference with and destruction of the plaintiff's property rights in the spring. The jury found a verdict for $2500 in favor of the plaintiff and from the judgment entered on this verdict, defendant has appealed, after motions for judgment non obstante veredicto, and for a new trial were overruled in an opinion by PAUL, J.

The assignments of error relate to certain portions of the charge of the court, refusal of binding instructions in favor of defendant, and overruling motions for judgment non obstante veredicto and for new trial.

The language in the deed creating plaintiff's interest in the spring is as follows: "Together with the right of way to conduct the water from the Lutz's Spring on land of party of the first part through a two-inch pipe to premises of the party of the second part, always provided that should the said party of the first part at any time in the future desire to connect with said pipes, he shall have the right to do so, without any further hindrance, or let or further bargaining and without further costs. Also for the said party of the second part to get his water at another spring near his place." The deed also contains a general warranty clause.

The appellee's theory of the case is that by the wilful acts of the appellant, there has been a positive interference with and destruction of an established property right for which it must answer in damages. The right to the use of the water from the destroyed spring was a property right, established and created by deed. In

contemplation of law, the right to enter upon another's land and take water for domestic purposes is an easement: 19 C. J. 870; *Hill v. Lord*, 48 Me. 83.

Appellant claims that the grant in the deed does not authorize the taking of water by means of a pipe line, the means by which it has been utilized ever since plaintiff built his first house on the land conveyed. The testimony shows that he bought the land in 1923, built his first house in 1923, and in 1924 constructed the pipe line from the unnamed spring to his house and used the water therefrom for refrigeration and domestic purposes. This manner of using the spring was continued thereafter down to the time of the destruction of the spring. True, Umbenhauer testified that he once notified the appellant to discontinue the pipe line, but was contradicted by Zimmerman and took no further action. His testimony, apparently, was not believed by the jury in this, as in other respects. Accepting the aspect of the matter most favorable to the plaintiff, as must be done on review, the water of the spring was utilized by means of the pipe line continuously for a period of over eight years without interruption or objection.

The possible uncertainties in the deed, both as to the identity of the spring and the manner of its use, clearly call for the application of the legal principle that where the language of a deed or other contract is doubtful or uncertain in meaning, the construction put upon it by the subsequent action of the parties under it will be accepted by the courts. Certainly, a third party cannot now set up a contention that the deed means something different or more or less than the parties have by their actions construed it to mean. The practical construction put upon the deed by the subsequent action of Umbenhauer and Zimmerman, both as to the identity of the spring and the method of utilizing its water, must be accepted as binding upon them and upon and all claiming under them. This conclusion is supported by authorities both within and beyond this jurisdiction.

In *Cram v. Chase*, 35 R. I. 98, 85 A. 642, it was held that a conveyance by a man to his daughter, who ran a boarding house on land which he conveyed to her, of a privilege to take water from a spring on his remaining land, "as occasion may require," did not limit the right to the manner of use then in existence, and, although the custom had been to take the water in pails and barrels, she might draw the water to her premises by a pump connected with the spring by a pipe, at least, where the parties had acquiesced in such construction for many years.

In *Collison v. Phila. Co.*, 233 Pa. 350, 82 A. 474, the question was whether the easement to lay a pipe line included the right to build and maintain a pump house. The grantor permitted the erection of the pump house and its use for fourteen years without objection. This was held conclusive against him. In *Neff v. Penna. R. R. Co.*, 202 Pa. 371, 51 A. 1038, it was said, at p. 379: "The practical construction thus given the clause of the deed in question not being inconsistent with its terms will be adopted so as to give effect to the design and intention of the parties."

Appellant relies largely upon the law of subterranean waters, as establishing the principles applicable to the instant case. The cases which appellant cites, *Acton v. Blundell*, 12 M. & W. 324; *Wheatley v. Baugh*, 25 Pa. 528; *Haldeman v. Bruckhart*, 45 Pa. 514, and *Lybe's Appeal*, 106 Pa. 626, are all based on a very different state of facts. All these cases hold in substance that, where a land owner, making excavations on his own land, unintentionally destroys invisible subterranean streams which supply his neighbor's well or spring and of whose existence he did not know, it is an act of damnum absque injuria. The present case is not based on the interruptions of a subterranean stream nor on the interference with percolating waters supplying the spring; it is based on the wilful and intentional acts of the defendant in destroying a spring by digging away

its base when the spring itself was visible on the surface, the danger having been pointed out to appellant's superintendent and warning having been given him. All the subterranean water cases cited are based on the fact that the subterranean streams were hidden from view and their existence unknown. Of course, no duty of protecting them was imposed on the defendants in those cases. They could hardly be blamed if in the lawful use of their own properties they unintentionally interfered with the hidden rights of others; that is not the case here. The cases thus cited bear in themselves qualifications of the rule which appellant seeks to apply. All of them indicate that where a known and visible water supply is interfered with, a cause of action arises.

In *Wheatley v. Baugh,* supra, at p. 531, it is said: "A spring gutter on the surface is none the less a water course, although it is not equal in volume to a river. Small as it may be, if it have a clear and well defined channel, and a regular flow in that channel, it cannot be diverted to the injury of the proprietor below."

In *Haldeman et al. v. Bruckhart,* supra, at p. 519, it was said: "A surface stream cannot be diverted without knowledge that the diversion will affect a lower proprietor. Not so with an unknown subterraneous percolation or stream. One can hardly have rights upon another's land which are imperceptible, of which neither himself or that other can have any knowledge. No such right can be supposed to have been taken into consideration, when either the upper or lower tract was purchased."

The following appears in *Lybe's Appeal,* supra, at p. 634: "The rule is that *wherever the stream is so hidden in the earth* that its course is not discoverable from the surface, there can be no such thing as a prescription in favor of an adjacent proprietor to have an uninterrupted flow of such stream through the land of his neighbor." (Italics supplied).

The complaint of appellee is not of the interruption

of the source of supply of the spring by the interception of underground or percolating waters, but of the wilful demolition of the base of the spring. The defendant proceeded with its work with full knowledge of the spring, the use made of it and the danger to it; by so doing, it assumed the risk of destroying it.

Where a landowner grants the "free and unrestricted use of a certain spring" on his land to an adjoining proprietor, and with knowledge that the spring is supplied with water by a subterranean stream makes excavations in the bed of such stream in such manner as to divert its waters from the spring, his action is in direct conflict with the covenants of the deed of conveyance, and an unwarranted invasion of the grantee's rights under the deed, which will be protected by injunction: *Hayes v. Adams*, 109 Or. 51, 218 Pac. 933.

A grant of a right to water as then conducted from certain springs will prevent the grantor from doing anything on his remaining land which will cut off the water supply: *Johnstown Cheese Mfg. Co. v. Veghte*, 69 N. Y. 16, 25 Am. Rep. 125. Thus, where the grantor, by warranty deed, conveyed to the grantee certain premises, upon which was situated a cheese factory, during the time it should be used for the purpose of manufacturing cheese, and also the use of the water of certain springs on remaining land of the grantor as then conducted to the cheese factory, with a right to enter upon such land of the grantor to construct and repair the pipes conveying the water of the springs, and the right, in case the water from the springs should be found insufficient for the needs of the factory, to dig other springs and conduct the waters thereof to such factory, but reserving to the grantor the right to use the water of these springs, provided such use would not interfere with the use of the water by the factory; and the grantor, after the conveyance, unnecessarily made excavations and constructions on his lands which materially diminished the supply of water from the springs and interrupted the

business of the factory, the grantor was held liable for damages and enjoined from thereafter interfering with the flow of the springs, the court saying": ...... When there is no grant or covenant, the law is well settled that one who by excavations on his own land, not interfering with any known watercourse, withdraws water from his neighbor's well or spring by percolation, is not liable for the injury. ...... But where the question arises between grantor and grantee, or covenantor and covenantee, it depends upon the intent of the grant, and is whether the acts complained of are in derogation of the grant or in violation of the covenant." These authorities clearly support the appellee's position and are in accord with our own view of the case.

Appellant advances a further argument. The fact that Umbenhauer had granted the right to the plaintiff to get the water from the spring, it is contended, gave to appellee no greater rights than if the grant had embraced not only the water but also the ground from which it flowed. Therefore, appellant concludes, the rights of the appellee may be considered as though he and Umbenhauer were adjacent landowners with the spring upon the property of the appellee and the borrow pit on the property of Umbenhauer. The fallacy of this position lies in the failure to distinguish between the reciprocal rights and duties of parties standing in the relationship of adjoining landowners, and those arising from the contractual relationship of grantor and grantee of an easement. In the former case, there would be considerable force in the position that the injury to a spring on the land of an adjoining owner is, in the absence of negligence or malice, damnum absque injuria: *Haldeman v. Bruckhart,* supra. In the latter relationship, however, the situation is entirely different. The grantee of the easement by grant has an absolute property right in the use of the spring, and the grantor is bound by his contractual obligations to refrain from invading that right by an act, the known consequences of

which could have no other result. In the instant case, the intentional demolition of the spring's base, in the face of ample warning and resulting in the spring's destruction or diversion, was such an act. The authorities already cited and discussed earlier in the opinion, are precisely to this effect.

Appellant conducted its excavation operation under license from Umbenhauer on the ground adjoining the spring, which still remained under Umbenhauer's ownership. As licensee of Umbenhauer, it could acquire no rights which Umbenhauer himself did not possess and hence took whatever rights it acquired by the license subject to all the obligations which rested upon the licensor.

The deed created an easement, without question, by its very wording, an easement appurtenant to the land conveyed by the deed. It was part of what the grantee received for the consideration he paid, and the grantor, his licensee, and anyone else claiming under him was bound to protect and defend it. We do not know and the record does not show, how much land Umbenhauer owned, and it may well be not all of his land became servient to the easement. But certainly all his land which was close to the spring and necessary to support its base became a servient estate, and the appellee's land, for this purpose, was the dominant estate. Umbenhauer could not destroy what he had thus, for a valuable consideration, created and sold. He would be estopped in equity from so doing, for having received the consideration he could not destroy what he granted and retain the consideration. This doctrine applies with equal force to his licensee, the appellant in this case. Notice of the appellee's rights was brought home to the licensee by the record of the deed and by the verbal notices and warnings given by the appellee. The grant of the use of the spring was created by warranty deed and certainly both Umbenhauer and his licensee were bound by the obligations assumed thereby.

The remaining question involves the measure of damages. The only right that the appellee has under the grant in the deed is to the water at the spring. Since the spring has gone dry as the result of appellant's action, it would be to no purpose to produce testimony as to the probable cost of remedying the damage, because it cannot be remedied. The spring is destroyed. It appeared from the testimony, that defendant attempted to restore conditions, but was unable to do so. Therefore, the damages are permanent. In such case, the measure of damages is the difference between the fair value of the property immediately before and after the injury: *Rabe v. Shoenberger Coal Co.*, 213 Pa. 252, 62 A. 854; *Neff v. Penn'a R. R. Co.*, supra; *McClelland v. Schwerd*, 32 Pa. Superior Ct. 313.

As to the refusal of a new trial because of alleged excessiveness of the verdict, quoting from *Martin v. Letter*, 282 Pa. 286, 127 A. 839, at pp. 290, 291: "The question is not whether as jurors we would have found a smaller verdict, or as a trial court would have compelled its reduction, but whether it is so grossly excessive as to warrant our interference, under the exceptional power given us by the Act of May 20, 1891, P. L. 101. In reference to this act, Mr. Justice FRAZER, speaking for the court, in *Scott, Admx., v. American Express Co.*, 257 Pa. 25, 31, says: 'We have repeatedly said that the question of the amount of the verdict would be reviewed only in cases where so grossly excessive as to shock our sense of justice, and where the impropriety of allowing a verdict to stand is so manifest as to show a clear abuse of discretion on the part of the court below in refusing to set it aside.' To like effect is *Gail v. Phila.*, 273 Pa. 275, and many other cases. Under the rule as above stated, this is not such a case as to warrant our interference, and, in view of our very recent decision in *Potts v. Guthrie*, 282 Pa. 200, further discussion seems unnecessary."

After a careful consideration, we cannot say that the

verdict is so large as to shock the conscience of the court, so that we should reform the verdict.

The assignments of error are overruled and judgment affirmed.