Schmidt, Appellant, *v.* Campbell et al.

Argued April 18, 1939.

Before Keller, P. J., Cunningham, Baldrige, Stadtfeld, Parker, Rhodes and Hirt, JJ.

*Ray Patton Smith*, for appellant.

*Morton Meyers*, with him *James R. Graham*, of *Graham, Yost & Meyers*, for appellees.

OPINION BY RHODES, J., July 13, 1939:

This is an action of replevin brought by plaintiff to recover a mortgage trust certificate in the possession of defendants, who claim the right to possession thereof on the ground that the certificate was pledged to the Morrellville Deposit Bank as collateral security for a mortgage granted by it. The verdict returned by the jury was molded by the trial judge as a verdict for defendants. Plaintiff's motions for judgment in his favor n. o. v. and for new trial were overruled, and he has appealed.

The certificate in question, issued by the Johnstown Trust Company and dated July 20, 1933, has a face value of $3,000. It was received in exchange for three trust agreements in the amount of $1,000 each (referred to throughout the record as "bonds"), issued by the United States Trust Company of Johnstown, whose business was taken over by the Johnstown Trust Company. Appellant has received $900 on account of the principal of $3,000, and it was agreed that for the purposes of this case the value of said certificate was $1,000, as of August 3, 1936, when the writ of replevin issued. Appellant testified that on January 30, 1930, he deposited the three "bonds" at the Morrellville bank for safekeeping; and that at the same time he deposited a $500 bond of another corporation which is not involved in this case. When appellant left his "bonds" with the bank he received a receipt to the effect that they were to be held as collateral. This receipt is printed in the margin.[1] Appellant had agreed to the exchange of the

---

[1] "Morrellville Deposit Bank
"Henry J. Schmidt  "Johnstown, Pa., Jan. 30, 1930.
"Your Account is this day credited with items stated below:
"Checks, taken as cash, are credited subject to final payment.
"3—$1,000 United States Trust Co. certificates Nos. B107, B108, B165.
"1—$500 United States Trust Co. certificate No. 587 to be held as Collateral.                                     G.
"C. R. Koontz, Cashier."

three $1,000 "bonds" for the new certificate. The defense was that the "bonds" were deposited as collateral security for the payment of a bond and mortgage of James G. Mangus and wife, in the sum of $3,500, and that the exchange certificate was held by the bank for the same purpose as the original "bonds" of the United States Trust Company of Johnstown. There is a balance due of $721.40 on the Mangus mortgage for which the bank now being liquidated by liquidating trustees claims the right to hold the certificate. The jury accepted the version of the transaction as presented by appellees. The primary issue at the trial was whether appellant had deposited his "bonds" with the Morrellville bank for safekeeping or, as contended by appellant, as collateral for the Mangus mortgage. See *Blossom Products Corp. v. National Underwear Co.,* 325 Pa. 383, 191 A. 40. Under the evidence the case was clearly one for the jury, and the trial judge properly refused appellant's point for binding instructions and his motion for judgment notwithstanding the verdict. On this appeal appellant does not seriously contend that on the evidence binding instructions could properly have been granted (sixth assignment of error).

Appellant has submitted numerous assignments of error. The third, fourth, seventh, eighth, ninth, tenth, and eleventh assignments complain of the trial judge's rulings on evidence. The only one requiring extended comment is the third, which relates to the admission in evidence of three powers of attorney, one of which is still in possession of appellees in connection with the certificate which is the subject of this action. The other two had been returned to appellant. Appellant misconceives the purpose for which these instruments were offered. Appellees did not rely solely upon them to establish their right of possession—there was other evidence produced to show the pledging of the "bonds." The powers of attorney served merely to corroborate that evidence and to substantiate the contention of ap-

pellees that the "bonds" were delivered to the bank as collateral and not for safekeeping. The legal efficacy of the instruments themselves was not in issue; consequently the fact that they were in blank and in a form authorizing the transfer of stock is not material. But it is argued also that the power of attorney now held by appellees was inadmissible because Dwight Griffith, whose name appears thereon as a subscribing witness, did not sign as such until long after it had been signed by appellant and when the latter was not present. In *Loftus, Adm'r, v. Miners National Bank of Pottsville,* 308 Pa. 362, 162 A. 227, a power of attorney had been executed and attested by one witness. A second subscribing witness who was not present at the execution of the instrument signed as a witness two days thereafter at the instigation of the donee of the power. There was no evidence that the donor of the power had authorized the signature of the additional witness to the paper, nor was there any evidence that the additional witness knew the handwriting of the donor. Our Supreme Court held that the power of attorney was properly admitted in evidence. The instant case is somewhat stronger because Griffith was actually present when appellant signed the instrument and saw him do so. We are of the opinion that, when the name of Griffith as a second subscribing witness to the power of attorney was affixed, where there was already the name of one subscribing witness, there was not a material alteration of the instrument, and that it was admissible in evidence. There is no merit in the remaining assignments of error in this group, and they are all overruled.

The first and second assignments of error are to the charge of the court. At the conclusion of his charge the trial judge said: "What have we said that we should not have said, or left unsaid what we should have said?" Counsel for appellant did nothing except take a general exception. If he desired more specific instructions

on the burden of proof and a fuller review of appellant's evidence, specific requests should have been made therefor. The criticism which appellant now directs to the charge of the court was not brought to the attention of the trial judge at the trial. Counsel for appellant had ample opportunity to have the alleged errors in the charge corrected. It is the general rule that error cannot be assigned to omissions in the charge unless a request so to charge has been made. *DeSena v. American Reduction Co.,* 88 Pa. Superior Ct. 199, 201. Read as a whole, the charge does not contain basic or fundamental error, and, when so considered, the issues were fairly put before the jury. Under such circumstances we will not reverse. See *Medvidovich et al. v. Schultz,* 309 Pa. 450, 164 A. 338; *Whitton v. H. A. Gable Co.,* 331 Pa. 429, 200 A. 644; *Giannone v. Reale,* 333 Pa. 21, 3 A. 2d 331. These assignments are accordingly overruled.

The twelfth assignment of error is to the form of four questions[2] submitted by the trial judge to the jury. In submitting these questions the trial judge said: "We have a practice of not only asking for a general verdict

---

[2] "1. Did Henry J. Schmidt sign the three powers of attorney involved in this case, or was his signature forged to them?

"Answer: Yes, we think he signed the three powers of attorney.

"2. Did Henry J. Schmidt leave his bonds with Morrellville Deposit Bank as collateral security for the payment of the mortgage of Mangus, who had bought the farm from the son of Henry J. Schmidt?

"Answer: We find that Mr. Schmidt left the bonds for payment of Mangus mortgage.

"3. Did Henry J. Schmidt leave his bonds with the Morrellville Deposit Bank for safe keeping only?

"Answer: We find he did not leave the bonds for safe keeping only.

"4. If you find that the plaintiff, Henry J. Schmidt, signed the three powers of attorney involved in this case, was Dwight J. Griffith present when they were signed?

"Answer: We find that Dwight J. Griffith was there."

but also asking for specific answers on specific points, and we have done that, and we ask you to answer the four specific questions we have given you." The controlling questions in the case were submitted for the jury's answers in addition to the general finding. The jury returned a general verdict, and answered the questions submitted to them.

A general verdict accompanied by answers to specific questions is not a special verdict. *Reese v. Peoples Coal Co.,* 64 Pa. Superior Ct. 519, 524. Cf. *Thompson v. Emerald Oil Co.,* 279 Pa. 321, 326, 123 A. 810. "A special verdict is where the jury find the facts of the case, leaving the ultimate decision of the cause upon those facts, to the court, concluding conditionally, that if upon the whole matter thus found, the court should be of opinion that the plaintiff had a good cause of action, they then find for the plaintiff, and assess his damages; if otherwise, then for the defendant: 3 Black 378; Boote on Suit at Law, 158": *Wallingford v. Dunlap,* 14 Pa. 31, at page 33. Therein lies the distinction between the case at bar and that of *Standard Sewing Machine Co. v. Royal Insurance Co. of Liverpool,* 201 Pa. 645, 51 A. 354, cited by appellant. At the trial counsel for appellant objected to the form in which the questions were stated, but did not suggest in what respect they were defective or how they could be improved. We see no objection to the form of the questions, and it was proper for the trial judge to submit them to the jury. The practice has been approved by our Supreme Court as recently as *Schwab v. Continental-Equitable Title and Trust Co.,* 330 Pa. 540, 199 A. 150, and *Bertinelli et al. v. Galoni,* 331 Pa. 73, 78, 200 A. 58. This assignment is overruled.

The fifth assignment of error relates to the refusal of a point for charge submitted by appellant in connection with the power of attorney now in possession of appellees. What we have said previously in discussing appellant's third assignment of error concerning

the purpose of offering the powers in evidence applies here, and this assignment is overruled.

The thirteenth assignment of error complains of the action of the court below in molding the verdict returned by the jury, which reads as follows: "And now, to wit: January 11, 1938, we the Jurors empanelled in the above entitled case, find a verdict in favor of the Defendant for the sum of $721.40 and that the defendant deliver the bonds to Henry J. Schmidt when payment is made." The trial judge molded this verdict as a verdict for appellees. The position of appellees from the inception of this action was that the Morrellville bank had the certificate in question as collateral for the amount remaining due on the Mangus mortgage. At no time have appellees claimed any interest in the certificate beyond that which such pledge would confer, and a verdict in their favor would give them no more. Since the amount remaining due on the principal sum of the Mangus mortgage is $721.40, a verdict for defendant in that amount was clearly intended as a verdict for appellees. Furthermore, when the verdict is viewed in the light of the issues at the trial, it is not contradictory, and the portion thereof following the word "defendant" might be disregarded as surplusage. "It is clear that a court has the power to mold a verdict to agree with the obvious intention of the jury: *Friedly v. Scheetz*, 9 S. & R. 156; *Cohn v. Scheuer*, 115 Pa. 178 [8 A. 421]; *Shively v. McDonnell*, 308 Pa. 298 [162 A. 287]. ...... This is a power, the exercise of which lies within the sound discretion of the court: *Cohn v. Scheuer*, supra": *Reppert v. White Star Lines, Inc., et al.*, 323 Pa. 346 at page 351, 186 A. 788, at page 790. The intention of the jury was plain, and it showed an intelligent understanding of the facts of the case. Under such circumstances the court may mold the verdict into form according to the requirements of the law. *Smullin v. Harenski*, 106 Pa. Superior Ct. 453, 455, 162 A. 319;

*Emblem Oil Co. v. Taylor,* 118 Pa. Superior Ct. 259, 264, 179 A. 773.

In *Park v. Holmes,* 147 Pa. 497, 23 A. 769, plaintiff claimed as her own property upon which defendant had distrained for rent. The jury rendered the following verdict: "The jury find that the defendant is entitled to $561 rent in arrear, and that the value of the goods liable to distress for said rent is $300. As to the rest of the goods they find for the plaintiff." The Supreme Court remarked, at page 499, that: "While the verdict is informal, in that it does not, in terms, find for the defendant, it contains sufficient to have justified the court in molding it into proper form." This assignment is overruled.

The fourteenth assignment of error relates to the refusal of appellant's motion for a new trial, and refers to twenty-one reasons filed in support thereof. Unless separate reasons for a new trial are made the subjects of specific assignments of error they need not be considered. *Riff et ux. v. Pittsburgh Railways Co.,* 298 Pa. 256, 262, 148 A. 102; *Zimmerman v. Houghwot,* 125 Pa. Superior Ct. 319, 321, 189 A. 519. However, these reasons are covered substantially by the assignments previously discussed, and there is no merit in any of them. The court below did not abuse its discretion in refusing appellant's motion, and this assignment is overruled.

All of the assignments of error are overruled.

Judgment is affirmed.