Bumbarger *v.* Walker, Appellant.

Argued April 30, 1958. Before JONES, C. J., MUSMANNO, ARNOLD, JONES and COHEN, JJ.

reargument refused June 20, 1958.

144

*James K. Nevling,* with him *Robert V. Maine,* and *Nevling and Davis,* for appellant.

*F. Cortez Bell,* with him *Bell, Silberblatt & Swoope,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, May 26, 1958:

The plaintiff, Harvey Bumbarger, owns a farm in Graham Township, Clearfield County, which, until 1955, was enriched with a spring which supplied all his domestic needs with pure, potable water but which, by October of that year became wholly useless because of certain chemical infiltrations which rendered it unfit for drinking, cooking, or cleaning purposes. The plaintiff's wife testified that, after the chemical invasion, the water made a precarious bathing agent because "it would burn the skin off you almost." Allowing her a little latitude for over-zealous exaggeration, there would still seem to be no doubt from the record that the water underwent a drastic transformation. Whereas originally it had a "good taste," it now became sour; whereas, before it was odorless, it was now offensive in smell; whereas theretofore it flowed easily and innocuously through pipes and fixtures, it now corroded and otherwise damaged its copper, brass and lead containers.

As no change in nature's manifestations occurs without the intervention of some force, put into effect either by man or cosmic energy, there had to be a reason for the deterioration in Bumbarger's spring. Bumbarger contended that this deterioration, which

made it necessary for him to obtain water elsewhere at considerable expense and inconvenience, was due to the discharging into his spring of drainage from an open pit mining operation on an adjoining property which was owned by one Albert Smith. He brought suit against Ray S. Walker and Robert Bailey, purportedly in charge of the strip mining in question. The jury returned a verdict in favor of Bumbarger in the sum of $10,000 against Ray S. Walker, but exonerated Robert Bailey from any liability in the premises.

Ray S. Walker has appealed, seeking judgment n.o.v. on the asserted basis that the evidence produced by Bumbarger did not prove that the drainage from his mining operation flowed into the plaintiff's spring, nor that he had made an unreasonable use of the Smith land, considering that it was located in coal fields, of which the plaintiff was well aware.

Walker, of course, had the right to take the coal out of the Smith lands in accordance with accepted methods of open pit mining and he was entitled to discharge the drainage waters accompanying such an operation in a manner consistent with a reasonable use of the land. Since the Smith property occupied a higher elevation than the Bumbarger property, Walker would not be liable if the mine waters reached Bumbarger's farm over and through some natural watercourse. In *Lucas v. Ford,* 363 Pa. 153, 155, we said: "The owner of upper land has the right to have surface waters flowing on or over his land discharged through a natural water course onto the land of another . . . He may make proper and profitable use of his land even though such use may result in some change in quality or quantity of the water flowing to the lower land . . . From those rules it is clear that only where the water is diverted from its natural channel or where it is unreasonably or unnecessarily changed in quantity or quality has the lower owner received a legal injury."

In view of the fact that the plaintiff won the verdict in the court below, we must read the record of the trial in the light most favorable to him. And, so interpreting the transcript, it is clear that Walker did not make use of any natural watercourse in draining impurities away from his mining operation. The record justifies the conclusion that persons working in Walker's behalf dug a ditch into which they pumped the mining drainage and that this drainage was so routed as to reach Bumbarger's property and defile his spring. Walker's actions constituted a clear invasion of Bumbarger's enjoyment of his property. In *Lehigh & W.B. Co. v. Pittston C.M. Co.*, 289 Pa. 492, 497, we said: "The right to use land for agricultural or mining purposes in the usual and proper manner, although it may result in some additional flow of surface water upon the land of an adjoining owner, is undoubted, but the right to collect such water and conduct it upon another's land through an artificial channel cannot be sustained. While proper farming or mining may affect the flow of surface water, yet, when it departs it must be in a natural course and not collected together and cast upon lower land by artificial means."

The defendant maintains that even if, arguendo, Bumbarger's spring became unusable, it was not proved conclusively that he was responsible for the resulting damage since there were seven other mining operations in the area: four deep mines and three open pit mines. Walker maintains in this connection that the jury was allowed to guess as to which mine was responsible for the befouling muck which penetrated Bumbarger's spring. But this argument is refuted by the size and content of the record which covers 450 printed pages. Landowners, chemists, civil engineers, sanitary engineers, coal operators, pathologists, coal analysts and farmers testified to every possible phase of the controversy and it was for the jury to decide whether the

plaintiff met the burden of proof of showing that the worm of corruption and contamination in the spring, which at one time contributed to life, health, and cleanliness on the Bumbarger farm but which now generated only the germs of decomposition and decay, got into the spring through the conduit originating in the mine workings on the Smith lands.

In the case of *Hornick v. Bethlehem Mines Corp.*, 307 Pa. 264, the defendant was charged with conducting its mining operations in a manner which desiccated the plaintiffs' springs. The plaintiffs recovered a verdict and the defendant claimed that the plaintiffs had not established a causal connection between the drying up of the springs and the defendant's mining operations. This Court affirmed the verdict, saying: "When a finding is a reasonable inference from the facts and conditions directly proved, it must be classed as legal evidence and not as a mere conjecture, surmise or guess."

In *Alwine v. Valley Smokeless C. Co.*, 271 Pa. 571, the plaintiff recovered a verdict because of the destruction of a spring due, he asserted, to the defendant's removal of certain pillars of support in a mining operation. Experts called by either side differed as to what caused the extinction of the spring, and the defendant sought a reversal of the verdict on that ground. This Court, in sustaining the verdict, said: "The cause of the loss of a spring is one of fact and here was for the jury . . . There were also circumstances tending to support plaintiff's case, and the conflicting evidence, as to which mining caused the damage, was necessarily for the jury . . . It was not a case where the jury were left to guess, but where they had to pass upon conflicting evidence, aided by a personal view of the premises."

We are satisfied that the issue of fact was properly submitted to the jury. In the case of *Collins v. Chartiers Gas Co.*, 131 Pa. 143, which involved damage to a water

well, this Court said: "On the question of negligence, the question of knowledge is always important, and may be conclusive. Hence the practical inquiry is, first, whether the damage was necessary and unavoidable; secondly, if not, was it sufficiently obvious to have been foreseen, and also preventable by reasonable care and expenditure?" The jury's verdict here established that the damage was not necessary and was avoidable, and that, it was sufficiently obvious to have been foreseen and preventable by reasonable care and expenditure. Hence, any further discussion of the case would be like digging a channel after the river has reached the sea.

Judgment affirmed.