Bumbarger *v.* Walker, Appellant.

302

Argued June 17, 1960. Before Rhodes, P. J., Gunther, Wright, Woodside, Ervin, Watkins, and Montgomery, JJ.

*Joseph J. Lee,* for appellants.

*F. Cortez Bell,* with him. *F. Cortez Bell, Jr.,* and *Bell, Silberblatt & Swoope,* for appellees.

OPINION BY RHODES, P. J., September 20, 1960:

Plaintiffs, Harvey Bumbarger, Jr., and Lillian A. Bumbarger, his wife, and Lewis E. Bumbarger and Anna Marie Bumbarger, his wife, brought these actions of trespass against defendants, Ray S. Walker and Robert Bailey, for damages resulting from ruination of the spring which supplied water to their properties. The complaints alleged that defendants, in conducting an open pit or strip mining operation on the Albert Smith farm at a higher elevation and about 2,250 feet distant from a spring used by plaintiffs for a domestic water supply, had caused water with a high sulphur content from the mining operation to flow into the spring and render the water unfit for use by plaintiffs in their respective dwellings.

Lewis E. Bumbarger and Harvey Bumbarger, Jr., are sons of Harvey Bumbarger, Sr., on whose land the spring in question is located. Plaintiffs each purchased a lot of ground from their father. These lots adjoin each other. Harvey Bumbarger, Jr., erected a dwelling on his land in 1949, while Lewis E. Bumbarger built in 1951. Under parol permission plaintiffs constructed a pipeline from the spring to their

respective lots. They subsequently received express grants of the easement appurtenant to use of the spring by deeds from their father given in confirmation of the previous parol grants between the parties.

Defendants' strip mining operation lies generally northwest of the spring on the farm of Harvey Bumbarger, Sr., and approximately 2,250 feet distant therefrom. The approximate elevation of the bottom of the pit is 1,728 feet, while that of the springhouse is 1,640 feet. The strata of the area has a general slope from the northwest to the southeast, that is, from defendants' operation downgrade to the springhouse. A watercourse begins at the eastern edge of defendants' mining pit, extends over the property of Harvey Bumbarger, Sr., and passes within fifty feet of the spring in question. On the northeast portion of the lands of Harvey Bumbarger, Sr., are some old strippings and mining operations which have been largely filled in, and are approximately 600 feet from the spring and 30 to 40 feet above the level of the spring. The mining operations ceased at least seven years prior to 1955.

The pit resulting from defendants' strip mining was 200 to 300 feet in length, 40 to 50 feet in width, and 40 to 50 feet deeper than the adjacent highway. A considerable amount of water accumulated in the pit.

The testimony indicates that on several occasions there had been drilling and blasting in the pit, and following the blasting the water disappeared from the bottom of the pit. Concussions from the blasting were felt by the home owners in the area. In one instance five windows were shattered; in another a portion of a cellar wall was damaged. In 1955, subsequent to the blastings in the open pit, the spring on the property of Harvey Bumbarger, Sr., became unfit for domestic use due to the sulphur in the water. The walls of the springhouse turned reddish in color.

Cooking utensils and plumbing were eaten by the acid. Defendants produced evidence that the spring in question was fed by percolating water as distinguished from surface water.

Testimony of both lay and expert witnesses offered to establish the cause of the contamination was conflicting. Plaintiffs contended, inter alia, that defendants had shattered the underground strata of rock by blastings in the open pit thereby disturbing the flow of subterranean or percolating waters and causing sulphur or acid water to flow into the spring. On the other hand, defendants asserted that the water which caused the contamination of plaintiffs' water supply came from the percolating waters of the old strippings and deep mining operations in the vicinity.

At the conclusion of the trial, eight special questions[1] were submitted to the jury.

---

[1] "(1) Is there a water course which leads from the culvert under the Deer Creek Road at the Maguire property, and thence through the property of Harvey Bumbarger, Sr., which has a well defined location, and well defined banks?

"A. Yes.

"(2) Did percolating or underground water from the Walker-Bailey strip mine on the Smith land cause injury to the spring on the property of Harvey Bumbarger, Sr.?

"A. Yes.

"(3) If your answer to No. 2 is Yes, did the blasting on the Walker-Bailey strip mining operation on the Albert Smith property cause injury to the percolating waters eventually flowing into the Harvey Bumbarger, Sr., spring?

"A. Yes.

"(4) Did the surface waters pumped from the Walker-Bailey strip mine operation cause an injury to the spring on the property of Harvey Bumbarger, Sr.?

"A. No.

"(5) Were the Walker-Bailey mining operations on the Albert Smith property carried on negligently, or with malice and intent to deprive Lewis Bumbarger and Harvey Bumbarger, Jr. and their

The jury, after answering the special questions, returned a general verdict in favor of Harvey Bumbarger, Jr., in the amount of $4,800, and in favor of Lewis E. Bumbarger in the amount of $3,200. Motions for new trial were not pressed in the court below beyond the formal filing within the four-day limitation. The motions for judgment notwithstanding the verdicts were dismissed by the court below, and judgments were entered on the verdicts. Each defendant appealed from both verdicts.

On these appeals defendants maintain (1) that, when a spring depends for its supply upon percolations through land of others and explosives are employed in the use of that land for mining coal and the quality of the water supply is changed in the absence of malice, negligence, and foreseeability of harm, the actor is not liable for injury to the spring; (2) that a parol grant to use a spring on the lands of a grantor does not vest in the grantee a cause of action against the one who changes the quality of the spring; (3)

wives, of their respective property rights in the Harvey Bumbarger, Sr., spring?

"A. No.

"(6) Were the Walker-Bailey strip mining operations on the Albert Smith property conducted without regard to the rights of the plaintiffs, Lewis Bumbarger and Harvey Bumbarger, Jr. in and to the surface or underground and percolating waters?

"A. No.

"(7) Have Harvey Bumbarger, Jr. and his wife, and Lewis E. Bumbarger and his wife, obtained the right to use water in their respective homes from a spring on the Leroy Hubler property, which water is comparable to or better than the water originally obtained by them from the Harvey Bumbarger, Sr. spring?

"A. Yes.

"(8) Did the percolating waters from the strip mining operations on the Harvey Bumbarger, Sr. property cause injury to the spring on the property of Harvey Bumbarger, Sr.?

"A. No."

that, where plaintiffs have obtained water comparable to or better than the original supply of water without proof of acquisition expenses, plaintiffs are not entitled to damages; and (4) that the jury made special findings on controverted questions and returned a general verdict inconsistent with the findings, and that therefore the general verdict should be reversed.

The general verdict prevails. At most, the result of the jury's special findings is to confine the cause of the contamination of the spring to the blasting by defendants. That acts by an adjoining owner can destroy or damage a spring which depends for its supply upon filtrations and percolating waters running through his land has been recognized by our courts. See *Rothrauff v. Sinking Spring Water Company*, 339 Pa. 129, 132-135, 14 A. 2d 87; *Zimmerman v. Union Paving Company*, 335 Pa. 319, 322, 6 A. 2d 901. The verdicts of the jury established defendants' liability for the ultrahazardous activity of blasting carried on by them. Cf. *Bumbarger v. Walker*, 393 Pa. 143, 148, 142 A. 2d 171.

Furthermore, it appears that defendants might have disposed of the water in the bottom of the pit by pumping it to the west where the watershed sloped in a direction away from plaintiffs' spring. Thus any question of injury to plaintiffs' spring could have been avoided. Cf. *Collins v. Chartiers Valley Gas Company*, 131 Pa. 143, 18 A. 1012; 139 Pa. 111, 21 A. 147. As we said in *Evans v. Moffat*, 192 Pa. Superior Ct. 204, 220, 160 A. 2d 465, 473 (allocatur refused): ". . . but mere economic advantage offers no excuse for causing substantial harm to another's property if such harm can be avoided by proper measures."

Section 519 of Restatement, Torts, vol. 3, p. 41, defines the liability for ultrahazardous activities as follows: "Except as stated in §§521-4, one who carries

on an ultrahazardous activity[2] is liable to another whose person, land or chattels the actor should recognize as likely to be harmed by the unpreventable miscarriage of the activity for harm resulting thereto from that which makes the activity ultrahazardous, although the utmost care is exercised to prevent the harm."

In *Laventhol v. A. DiSandro Contracting Company*, 173 Pa. Superior Ct. 522, 525, 98 A. 2d 422, 423, Judge WRIGHT said: "Liability for concussion damage resulting from non-negligent blasting operations has now been established by Federoff v. Harrison Construction Co., 362 Pa. 181, 66 A. 2d 817."

The record indicates that the spring on the property of Harvey Bumbarger, Sr., had been used for domestic purposes at least from 1917, and that the contamination did not develop until 1955 and 1956, which was subsequent to the strip mining and blasting by defendants. After the coal had been removed by defendants, they drilled a hole 40 to 50 feet deep below the bottom of the pit and exploded dynamite therein which successfully removed the accumulated water therefrom. Admittedly the bottom of the open pit of defendants' strip mining was at a higher elevation than the Bumbarger spring. Where conditions which have continued for a long period of time change coincidentally with the occurrence of a new event, which in common experience may have caused the change, there is sufficient evidence of causation present for the case to go to the jury. *Richard v. Kaufman*, 47 F. Supp. 337, 338; *Alwine v. Valley Smokeless Coal Company*, 271 Pa. 571, 573, 115 A. 882. In addition, there was expert testimony presented by both plaintiffs and defendants that the ground surface and rock

---

[2] Defined in section 520.

strata underneath sloped downward in a southeasterly direction from the mining operation and toward the Bumbarger spring, and that there was visible seepage of sulphur or mine water appearing at five places at elevations of 11 to 30 feet above the spring and 900 feet or less distant therefrom after the blasting. New seepage discolored and killed the grass. There was expert testimony that the change in the rock strata by blasting would change the course of subterranean waters and cause damage to the spring. We think the evidence of plaintiffs and their expert, if accepted by the jury, was sufficient in its totality to show that defendants' blasting and removal of the accumulated water from the bottom of the pit by drilling and blasting so altered the underground strata and percolating waters as to pollute and cause damage to the spring used by plaintiffs.

The following statement of Mr. Justice LINN, speaking for the Supreme Court in *Federoff v. Harrison Construction Company,* 362 Pa. 181, 183, 66 A. 2d 817, is controlling and applies to the blasting described in this record: "We think the record supports a finding that the damage was caused by the blasting, thus bringing the case within the rule stated in section 519 of the Restatement of Torts: . . ."

In *Richard v. Kaufman,* 47 F. Supp. 337, supra, the water in a spring disappeared after blasting operations were carried on by the defendant. The evidence indicated that tremors were felt on the farm of the plaintiff at the time of the explosion together with vibrations in the farmhouse and the rattling of the windows. The District Court of the Eastern District of Pennsylvania affirmed the trial court's verdict for the plaintiff basing its decision on section 519 of Restatement, Torts. The *Richard* case deals with the diminution of water supply, while the instant case is

concerned with the change in the quality of the water supply.

Plaintiffs' property rights in the spring on their father's land was sufficiently established. The right or easement of plaintiffs as grantees of lands from their father's farm to use water from the spring was at first a parol grant or license and was subsequently formalized by the deeds as set forth in plaintiffs' amended complaints. Pipes were laid and the use of the water from the spring to supply plaintiffs' premises was open and notorious and existed some time prior to suit. Even if we ignore the express grants of the water rights contained in the subsequent deeds by the father to the sons, the apparently permanent and obvious servitude was reasonably necessary to the enjoyment of plaintiffs' properties as a dominant estate, and an easement appurtenant for use of the spring could well arise by operation of law. An executed parol license becomes irrevocable when acts have been done by one party in reliance upon the other. *Leininger v. Goodman*, 277 Pa. 75, 78, 120 A. 772; *Dark v. Johnston*, 55 Pa. 164, 169.

Moreover, as early as *Held v. McBride*, 3 Pa. Superior Ct. 155, 158, and as recently as *Paci v. Shipley*, 166 Pa. Superior Ct. 374, 377, 71 A. 2d 844, 846, this Court held: " 'It is settled law in Pennsylvania that an owner of land may arrange it as he pleases, doing no injury to others, and that any ways or other privileges which he may provide for the necessary or convenient use of the different parts of the land, or of structures on it, will remain as servitudes upon the parts subjected to them by him, in the hands of subsequent purchasers with notice, or when the easements are continuous and apparent. The easements thus created, being for the specific use of the lands for which they were provided, become appurtenances of those domi-

nant estates, and require no deed or writing to support them; they pass by a conveyance of the estates to which they are appurtenant.' "

It is also argued that the damages recovered by plaintiffs are excessive.

When the injury to property is permanent the measure of damages is the difference in market value before and after the injury or the cost of removing the obstruction whichever is the lower amount. *Rabe v. Shoenberger Coal Company*, 213 Pa. 252, 256, 62 A. 854; *Zimmerman v. Union Paving Company*, 134 Pa. Superior Ct. 373, 383, 4 A. 2d 319; *Hoffman v. Berwind-White Coal Mining Company*, 265 Pa. 476, 479, 109 A. 234.

Apparently the spring is permanently destroyed, and thus a permanent injury exists. *Zimmerman v. Union Paving Company*, supra, 134 Pa. Superior Ct. 373, 383, 4 A. 2d 319. The expert witness for plaintiffs established the "before" value of the property of Harvey Bumbarger, Jr., as $12,600, and the property of Lewis E. Bumbarger as $8,400. The "after" value was fixed at one half, or $6,300 for the former, and $4,200 for the latter. The jury's verdicts, being $4,800 for Harvey Bumbarger, Jr., and $3,200 for Lewis E. Bumbarger, were considerably less than the losses testified to by the real estate expert. We do not believe that the verdicts are grossly excessive or that there is any basis for setting them aside.

Moreover, the jury was not obliged to conclude that plaintiffs could obtain sufficient water from the Leroy Hubler spring of a comparable quality on a *permanent* basis or that plaintiffs' damages were limited to the cost of piping water from the Hubler spring.

Under the evidence in this record, the question of damage to plaintiffs' property interests in the use of the spring was a question for the jury.

Finally, defendants argue that the special findings were inconsistent with the general verdict. Where the complaints state a cause of action and the evidence supports the allegations, plaintiffs' verdicts may be sustained whatever the legal theory on which liability might be based. *Kopka v. Bell Telephone Company of Pennsylvania,* 371 Pa. 444, 449, 91 A. 2d 232; *Federoff v. Harrison Construction Company,* supra, 362 Pa. 181, 66 A. 2d 817.

A general verdict accompanied by answers to specific questions is not a special verdict. *Schmidt v. Campbell,* 136 Pa. Superior Ct. 590, 596, 7 A. 2d 554. The jury's special findings here do not negate the general verdict which is controlling. The special findings, which are looked upon with favor by our courts (*Abraham Fur Company v. Cameron,* 295 Pa. 408, 418, 145 A. 578), are generally consistent with the general verdict. There is no error in this respect.

Judgments are affirmed as entered.

--------

DISSENTING OPINION BY WRIGHT, J.:

The question here involved is one which materially affects property rights in this Commonwealth. A spring depends for its water supply upon percolations beneath the surface of the ground, and the owner of adjoining land employs explosives in the lawful use of his property for mining purposes. It is my view that, in holding the adjoining owner liable for a change in the quality of the water supply, the majority is extending the doctrine of tort liability to an unwarranted extent.

It is important to bear in mind (1) that the damage claimed by these plaintiffs was not the result of diversion of mine drainage water from its natural

water course, which was the situation in *Bumbarger v. Walker,* 393 Pa. 143, 142 A. 2d 171; (2) that the alleged contamination of the water supply occurred in the mining process, and was not the result of a trespass on and invasion of plaintiffs' property by vibrations in the ground; and (3) that the defendants were not negligent in the mining operation, and harm was not intended or foreseeable. As stated by President Judge PENTZ: "The result of the special findings is to confine the cause of the contamination of the spring to the blasting by the defendants in their stripping operation, blasting being a normal activity in mining, without negligence, or intent to harm plaintiffs and without disregard of the rights of the plaintiffs in and to underground or percolating waters".

It has always been settled law in this Commonwealth "that where a spring depends for its supply upon filtrations or percolations of water through the land of an owner above, and in the use of the land for mining or other lawful purposes the spring is destroyed, such owner is not liable for the damages thus caused to the proprietors of the spring, unless the injury was occasioned by malice or negligence. To such percolations or filtrations, then, the inferior owner has no right": *Haldeman v. Bruckhart,* 45 Pa. 514. See also *Lybe's Appeal,* 106 Pa. 626; *Williams v. Ladew,* 161 Pa. 283. The majority opinion cites *Rothrauff v. Sinking Spring Water Co.,* 339 Pa. 129, 14 A. 2d 87, and *Zimmerman v. Union Paving Co.,* 335 Pa. 319, 6 A. 2d 901, but these cases support the established rule. In the *Rothrauff* case our Supreme Court said: "This much is settled,—that when a spring depends for its supply upon filtrations and percolations through the land of an adjoining owner, and in the use of that land for lawful purposes the spring is destroyed, such owner, in the absence of malice and negligence on his

part, is not liable for the damage thus occasioned". In the *Zimmerman* case, wherein it was held that defendant's conduct had not resulted in any legal damage, our Supreme Court said "that the subterranean sources of a spring are not perceptible, and damage caused by operations in their vicinity cannot usually be foreseen or avoided". In *Collins v. Chartiers V. Gas Co.*, 131 Pa. 143, 18 A. 1012; 139 Pa. 111, 21 A. 147, also cited in the majority opinion, our Supreme Court said: "Hence the practical inquiry is, first, whether the damage was necessary and unavoidable; secondly, if not, was it sufficiently obvious to have been foreseen, and also preventable by reasonable care and expenditure"? There is therefore merit in the suggestion that the theory of liability must be that an actor is responsible only for injuries which he can foresee. See *Harclerode v. Detwiler*, 61 Pa. D. & C. 541.

It is of course true that liability for concussion damage resulting from non-negligent blasting operations has now been established: *Federoff v. Harrison Construction Co.*, 362 Pa. 181, 66 A. 2d 817; *Laventhol v. A. DiSandro Contracting Co.*, 173 Pa. Superior Ct. 522, 98 A. 2d 422. However, as initially emphasized, that is not the situation in the case at bar. These plaintiffs did not establish concussion damage. The contamination of the spring did not result from a trespass on or invasion of their property by vibrations in the ground. It is clear from the record that there was no reduction in the quantity of the water supply. It is equally clear that the change in its quality was a natural consequence of the mining operation, something totally unrelated to the method used in removing the coal. Since the contamination of percolating waters occurs in the mining process regardless of the use of explosives, and since there is no liability without negligence when explosives are not used, it is my

view that it is unreasonable to impose liability for the same result simply because of the use of explosives.

GUNTHER and WATKINS, JJ., join in this dissent.