Zimmerman *v.* Union Paving Company, Appellant.

Argued April 24, 1939. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*John Kennedy Ewing, 3rd,* of *Saul, Ewing, Remick & Saul,* with him *Wesley K. Woodbury,* for appellant.

*J. L. N. Channell,* with him *H. O. Bechtel,* for appellee.

OPINION BY MR. JUSTICE STERN, June 19, 1939:

The facts are set forth in *Zimmerman v. Union Paving Company,* 134 Pa. Superior Ct. 373. For present purposes they may be briefly stated as follows: In 1923 William C. Umbenhauer, owner of a tract of land, deeded to plaintiff a small portion of it, two hundred feet square, "Together with the right of way to conduct the water from the Lutz's Spring on land of party of the first part [Umbenhauer] through a two inch pipe to premises of the party of the second part [Zimmerman], . . . Also for the said party of the second part to get his water at another spring near his place." Plaintiff

built a house on the land purchased, established his residence there, and installed a pipe line from the Lutz spring, using the water for all manner of domestic purposes. He also laid a similar pipe from the other (unnamed) spring on Umbenhauer's property to the front of the house, where he erected a "fountain"—a cemented pool or well—and used this water for refrigeration, drinking and cooking. In 1932 defendant company, which was building a state road in the neighborhood, acquired from Umbenhauer the right to excavate and remove soil from his land, and started to dig there at a place called the "borrow pit." Some distance back from the top of the bank of this pit was the unnamed spring, water from which began seeping through the side of the pit. Plaintiff showed this to defendant's superintendent in charge of the work, told him of his rights in the spring, and warned him against its destruction or injury. Defendant kept on with the excavation, with the result that the full flow of the spring came through at a place some six feet lower than its original outlet. Previously it had issued at a point a foot and a half higher in elevation than plaintiff's "fountain", and the water had run through the pipe by gravity, but due to the lowered outlet pumping would now be required to conduct the water by pipe. Plaintiff did not install a pump, but he and his family began carrying the water to his house in buckets, a distance of about 300 feet, and this method of transporting the water has continued during the seven years which have elapsed since defendant's act changed the course of the spring. Plaintiff brought suit in trespass to recover for alleged permanent damage to his property and reduction in its market value. A verdict of $2500 in his favor was sustained by the court below and by the Superior Court on appeal.

Aside from the question as to the legal effect of the particular phraseology of the deed, there is little ground for controversy between the parties. Ordinarily, when

a spring depends for its supply upon filtrations and percolations through the land of an adjoining owner, and in the use of that land for lawful purposes the spring is destroyed, such owner, in the absence of malice and negligence on his part, is not liable for the damage occasioned, which is damnum absque injuria: *Wheatley v. Baugh*, 25 Pa. 528; *Haldeman v. Bruckhart*, 45 Pa. 514; *Williams v. Ladew*, 161 Pa. 283. This is true even if there be an express reservation of the right to conduct water from the spring on the other's land, and to lay pipes for the conveyance of the water: *Brain v. Marfell*, 41 L. T. n. s. 455, 20 Amer. Law Reg. n. s. 93. *Lybe's Appeal*, 106 Pa. 626. The reason upon which this principle is founded is that the subterranean sources of a spring are not perceptible, and damage caused by operations in their vicinity cannot usually be foreseen or avoided; where the existence, extent and location of such sources are unknown, any other rule would prevent the normal and legitimate development of the land. But if the act which causes the damage is persisted in after its effect has become apparent, or is merely wanton and of no use to the owner who performs it, or is attended by negligence, the law is otherwise: *Lybe's Appeal*, supra; *Johnstown Cheese Manufacturing Co. v. Veghte*, 69 N. Y. 16, 23; *Hayes v. Adams*, 109 Ore. 31, 218 P. 933. If any injury to a neighbor's rights in wells or a water supply is plainly to be anticipated, and can be avoided by the exercise of reasonable care and at reasonable expense, a land owner is not exempt from all obligation to pay regard to the effect of his operations on subterranean waters: *Collins v. Chartiers Valley Gas Co.*, 131 Pa. 143; 139 Pa. 111. Since, in the present case, defendant had ample warning of the likely result if the excavation was continued in the direction of the spring, it cannot, in the face of its wilful action after such notice, claim immunity from responsibility merely because the water diverted was of subterranean origin.

The real question in the case, and the one in regard to which we believe the trial court and the Superior Court were in error, is as to the extent of plaintiff's rights under the deed from Umbenhauer, and whether those rights were destroyed or impaired by defendant. In regard to the Lutz Spring, the deed expressly granted the right to conduct the water from Umbenhauer's land through a two inch pipe to plaintiff's premises. In the case of the unnamed spring, however, there was given to plaintiff only the right "to get his water." He was granted the privilege of taking the water, but not by any prescribed method of conveyance; on the contrary, the express grant of a right to conduct the water from the Lutz Spring by a pipe, and the omission of a similar grant in connection with the other spring, indicate that it was not intended to grant to plaintiff any such right in the case of the latter spring, but are equivalent, indeed, to an express denial of that right. It is true, in the absence of any provision to the contrary, that a grant of a right to take water may ordinarily be exercised by the grantee in any reasonable manner, since it carries with it every incident reasonably necessary to make the grant effectual, and usually this would include the right to convey the water by a pipe: *Cram v. Chase*, 35 R. I. 98, 85 A. 642;[1] *Haldiman v. Overton*, 95 Vt. 478, 115 A. 699; *French v. Morris*, 101 Mass. 68; *Churchill v. Harris*, 257 Mass. 499, 154 N. E. 87; *Givens v. Chandler*, 143 So. (La.) 79. But in each case the extent and manner of use depend upon the language of the deed. The circumstances may be such as to indicate that it was

---

[1] In this case the court said (35 R. I. 116, 85 A. 648): "We do not mean it to be understood by this that, as a general rule and under all circumstances, it should be inferred that a grant of a right to take water necessarily involves a right to use a pump and pipe. As shown in many of the above-cited cases, there may be such limitations express or implied, or such circumstances as to show that such a right is not to be inferred, and would be unreasonable and unduly burdensome to the servient estate."

not intended that a pipe should be used, as in *Myton v. Wilson*, 6 Pa. Superior Ct. 293. In the present case, as already stated, the deed inferentially precluded the right to get the water by the use of a pipe, and, although Umbenhauer for several years allowed it, that did not vest the privilege permanently in plaintiff. There is no ambiguity in the deed requiring its construction by testimony as to the subsequent acts of the parties. The use of the pipe was merely permissive and could be enjoyed only at the will of Umbenhauer. An easement may be acquired by prescription, but the period here was far short of the necessary time, and plaintiff, as to the use of the pipe, was but a licensee whose rights in that regard could be terminated at any time. At the trial Umbenhauer supported defendant's position.

Such being the limitation of his property right in the water of the spring, what damage to that right did plaintiff prove? The verdict of the jury was based upon testimony by expert witnesses as to diminution in the value of plaintiff's property before and after "the spring was taken away," or, "was destroyed," or, the property was "deprived of the use of the water," or, "the water was taken away," or, "the spring ran dry," and represented an alleged permanent depreciation in the value of the property after it was entirely deprived of the use of the water from the unnamed spring. Had any of these conditions actually occurred, plaintiff, of course, would thereby have been deprived of his property right in the spring as granted by the Umbenhauer deed. In fact, however, the spring did not "run dry," nor was it "taken away" or "destroyed," nor was plaintiff's property "deprived of the use of the water," nor was there any testimony that it has been diminished in volume or impaired in quality. All that has happened is that the spring now emerges from the ground about thirty feet distant from its former outlet and at a somewhat lower point. There was some suggestion on the part of plaintiff that it is now an entirely different spring,

but this contention is untenable since the same water flows through the earth as before, only, because of a slight diversion of its course, it comes to the surface a few feet from the place of its former outlet. Umbenhauer himself, the grantor in the deed, does not, and cannot, make any such claim, but on the contrary has permitted plaintiff, without question, to draw his water from the spring in its new location.

We have here, then, the unjust result that plaintiff has obtained a verdict of more than four times the amount paid by him for the land and for the water from the two springs, as damages for the alleged loss of water from the one spring,[2] although in fact he has suffered no such loss and still has all the rights in regard to this spring which he obtained under the Umbenhauer deed, being deprived only of the convenience of conveying the water through a pipe by gravity, which was not a right to which he was legally entitled under the deed. He can continue to "get" the water in buckets as he has been doing for several years, or, if Umbenhauer permits, he can pump the water through a pipe from the new outlet of the spring; but while either of these methods—to the former of which he is entitled as a matter of right—may be less desirable than to obtain the water by gravity, he cannot recover in the present action for being forced to resort to one or the other of them, partly for the reason that he has not proved any money damage resulting from the necessity of changing his method of getting the water, and more especially because he has not been deprived by defendant of any property right owned by him by virtue of his deed or otherwise.

The judgment of the court below, affirmed by the Superior Court, is reversed, and judgment is here entered for defendant.

---

[2] The value of the property prior to the injury complained of was fixed by plaintiff's witnesses at an average of $7,866. The verdict was for approximately one-third of that value.