Reinhart et al., Appellants, *v.* Lancaster Area Refuse Authority.

Argued June 12, 1963. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*Carl A. Wiker,* with him *Charles A. Achey, Jr.,* for appellants.

*W. Hensel Brown, Jr.,* with him *Brown and Zimmerman,* for appellee.

OPINION BY MONTGOMERY, J., September 12, 1963:

These two appeals were taken by plaintiffs below from the grant of judgments n.o.v. for the defendants following verdicts for money damages in plaintiffs' favor in two actions of trespass brought for contamination of wells located on their respective properties. The actions arose as a result of filling operations on land owned by defendant McFalls and leased by him to the other defendant, Lancaster Area Refuse Authority, for the purpose of dumping refuse thereon.

In the opinion of Judge JOHNSTONE we find a succinct description of defendants' operation: "For some years prior to the fall of 1960 McFalls had been dumping clean fill in the valley with the purpose in mind of eventually filling up the valley and creating level land between the two roads. . . . The actual operation of the landfill consisted of digging a trench or trough, depositing refuse in the trough during the day and then covering over the refuse each evening with a layer of clean earth and compressing each day's fill by running over it with a bulldozer. McFalls supplied whatever earth was needed to cover the refuse, either from his own land or elsewhere, and also directed where on his land the landfill was to be conducted."

There is little, if any, disagreement as to the basic facts. They may be briefly stated as follows: Prior to 1960 McFalls purchased the four-acre tract of land under consideration, located several miles south of the City of Lancaster, and had begun to fill a 20 foot valley or depression therein with clean fill. Before 1960 Reinharts had purchased an adjoining property with

two dwellings erected thereon, the occupants of which secured their water from two wells located on the property. About 1950 Ethel M. Hackman, who died August 25, 1961, acquired property in the same vicinity and constructed a dwelling house thereon which was served by a 93 foot well. All three wells produced water satisfactory in quantity and quality for the needs of the occupants of the several houses they served. McFalls, in 1960, leased his property to the Authority for a landfill operation which began in November of that year. Prior to the commencement of this operation, a 42 inch pipe had been laid to accommodate a stream running through McFalls' land. The dumping operation began in November of 1960 and refuse consisting mainly of manure, red paint, a foaming material, junk, tin cans and garbage were dumped thereon until April, 1961. During January, 1961 the wells, aforementioned, began to produce water with a reddish color and a strong odor. Tests were made of the sewage system on the Hackman property, but these tests failed to connect the contamination of the wells with it. The contamination of the wells continued up to the time of trial, October 3, 1962, with notice of the contamination of the Reinhart wells being given to the defendant McFalls on January 16, 1961.

This action falls into the category known as non-trespassory invasions of another's land. Restatement, Torts, §822, states the general rule as follows:

"The actor is liable in an action for damages for a non-trespassory invasion of another's interest in the private use and enjoyment of land if, (a) the other has property rights and privileges in respect to the use or enjoyment interfered with; and (b) the invasion is substantial; and (c) the actor's conduct is a legal cause of the invasion; and (d) the invasion is either (i) intentional and unreasonable; or (ii) unintentional and otherwise actionable under the rules governing

liability for negligent, reckless or ultrahazardous conduct."

Restatement, Torts, §832, applies the rule to waters: "Non-trespassory invasions of a person's interest in the use and enjoyment of land resulting from another's pollution of surface waters, subterranean waters or water in watercourses and lakes are governed by the rules stated in §§822-831 of this Chapter."

This is the law of Pennsylvania. *Burr v. Adam Eidemiller, Inc.,* 386 Pa. 416, 126 A. 2d 403; *Waschak v. Moffat,* 379 Pa. 441, 109 A. 2d 310; *Evans v. Moffat,* 192 Pa. Superior Ct. 204, 160 A. 2d 465.

Although the defendants admitted that there had been a substantial invasion of and interference with the plaintiffs' use and enjoyment of their respective properties, they contended that the evidence was not sufficient to prove that their activities were the legal cause of such invasion and interference; and they contended further that the evidence was likewise insufficient to establish that their conduct was negligent, or reckless, or ultra-hazardous.

As we review the record we must conclude that there is sufficient evidence to support the jury's finding that such invasion and interference was caused by the action of the defendants in filling the depression on McFalls' property. Although there was no direct proof that any of the material actually dumped found its way underground into plaintiffs' wells, the proximity of the operation to the wells, the depth of each, the nature of the fill as compared with the nature of the contamination, the time of fill in relation to the time the pollution was first noticed, and the results of a dye test to eliminate other causes were, we think, sufficient, circumstantially, to support the jury's finding that the landfill was the cause of plaintiffs' damage. *Jackson v. United States Pipe Line Company,* 325 Pa. 436, 191 A. 165. This was a jury question. *Bumbarger v. Walker,* 393 Pa. 143, 142 A. 2d 171.

Plaintiffs' contention that the defendants were negligent is based on the following facts, as stated in their brief: ". . . a land fill was conducted in a twenty (20) feet deep valley, approximately three hundred (300) feet wide and six hundred (600) feet long adjacent to a number of dwellings, within eight (8) feet, thirty-four (34) feet and one hundred (100) feet of three (3) wells, where topsoil to a depth of at least four (4) feet was removed from the area used, where refuse including paint and sewage was dumped, and where a pollution officer of the Pennsylvania Department of Health refused to approve the area for refuse activities prior to [its] being used for this purpose, which activities resulted in the pollution of the aforesaid three (3) wells?" The record supports this statement of facts.

The lower court, in its charge, ruled out the possibility of the jury finding that the invasion of plaintiffs' properties by defendants was intentional and unreasonable which would make them responsible under clause d(i) of §822 aforesaid. Plaintiffs presently charge error in this regard and rely on their general exception to the charge to justify their raising the question at this time. We need not rule on this point in the light of our conclusions hereinafter stated. The lower court, thereafter, in granting judgment n.o.v. for the defendants, ruled out the other theory of plaintiffs' case under clause d(ii) of §822, viz., that defendants' conduct was negligent, or reckless, or ultrahazardous.

Judge JOHNSTONE in his opinion states: "The jury was instructed that the only conceivable basis upon which they could find the defendants guilty of negligent conduct from the testimony presented was the fact that the landfill was conducted on the McFalls property contrary to the recommendation of the employees of the Pennsylvania Department of Health." He persisted in this view of the record all through his opin-

ion. However, our examination of the record discloses other evidence which might support a finding of negligence.

Since the verdict was in plaintiffs' favor the testimony must be considered in the light most favorable to them and all reasonable inferences must be drawn in their favor. With this in mind, we find testimony establishing that ten days before the Reinhart wells showed signs of contamination the defendants dumped hundreds of gallons of a red liquid, in addition to a large quantity of a soaplike material, into the fill. Mr. Landis, a disinterested witness, observed barrels of red paint being dumped, as well as garbage and white foamy material. He also observed that defendants, in securing earth to cover the refuse and garbage they were burying, dug 16 to 20 feet below the level of the waterline at the bottom of this valley and filled it with garbage, etc. Mr. Shertzer, the Authority's operator on the fill, acknowledged having received suggestions from the State Health officer to stay at least 40 feet away from plaintiffs' properties, but admitted that on instructions from Mr. McFalls they had dug a hole next to Reinharts' line and into the hill in order to secure sufficient dirt to cover the dumpings. He also admitted to the dumping of one load of red paint. Mr. McFalls also admitted to receiving suggestions from the State Health officer that they stay 40 feet away from the Reinhart wells with any fill. Further, Mr. McFalls was aware that the source of water for private homes in the area was from wells.

It is not seriously contended by appellants that this landfill operation was not a lawful use of the land. Therefore, on that premise, we must keep in mind the universal principle that, " 'Every man has the right to the natural, proper and profitable use of his own land, and if in the course of such use without negligence, unavoidable loss is brought upon his neighbor, it is

damnum absque injuria.' " *Chamberlin v. Ciaffoni*, 373 Pa. 430, 435, 96 A. 2d 140, 142, quoting *Strauss v. Allentown*, 215 Pa. 96, 63 A. 1073.

In applying these rules to subterranean waters, Mr. Justice STERN (later Chief Justice) said in *Rothrauff v. Sinking Spring Water Company*, 339 Pa. 129, 132, 14 A. 2d 87, 90: "This much is settled,—that when a spring depends for its supply upon filtrations and percolations through the land of an adjoining owner, and in the use of that land for lawful purposes the spring is destroyed, such owner, in the absence of malice and negligence on his part, is not liable for the damage thus occasioned:" (citing, inter alia, *Zimmerman v. Union Paving Company*, 335 Pa. 319, 6 A. 2d 901).

Although some decisions on this subject are based on the theory of nuisance or on liability imposed by statute,[1] there have been many cases where the negligent conduct of a landowner in making lawful use of his land to the damage of his neighbor has been recognized as actionable. We shall refer to some of them in order to aid us in determining what may constitute negligence in such situations.

In the leading case of *Wheatley v. Baugh*, 25 Pa. 528 (1 Casey 528), Chief Justice LEWIS, in his learned opinion, gives much enlightenment on this subject. In distinguishing between surface streams, subterranean streams, established or unknown, and percolating waters, he says at page 532, "But percolations spread in every direction through the earth, and it is impossible to avoid disturbing them without relinquishing the necessary enjoyment of the land. Accordingly the law has never gone so far as to recognise in one man

---

[1] Nuisance—*Peter Good v. Altoona City*, 162 Pa. 493, 29 A. 741 (1894); *Haugh's Appeal*, 102 Pa. 42 (1882); *Pottstown Gas Company v. Murphy*, 39 Pa. 257 (1861).

Statutory—*Jackson v. United States Pipe Line Company*, 325 Pa. 436, 191 A. 165 (1937).

a right to convert another's farm to his own use, for the purposes of a filter." And further, he says, "No man could dig a cellar, or a well, or build a house on his own land, because these operations necessarily interrupt the filtrations through the earth." In that case the spring which had been destroyed was considered as depending on percolations alone, but if the spring had been the result of a distinct watercourse leading to it he has this to say at page 535, "If this should be shown, and it should also appear that it could have been preserved without material detriment to the owner of the land through which it flowed, the destruction of it might be attributed to malice or negligence. In that case the law would furnish redress, because the injury would be unjustifiable."

*The Pennsylvania Coal Company v. Sanderson and Wife,* 113 Pa. 126, 149, 6 A. 453, 459, recognizes the rule of damnum absque injuria in the case of drainage from coal mines accruing in the normal manner of operation in the absence of malice or negligence, but also recognizes a distinction between the natural use of land and something unnatural, quoting *Sanderson v. The Pennsylvania Coal Company,* 86 Pa. 401, " '. . . and it seems but reasonable and just that the neighbor who has brought something on his own property which was not naturally there, harmless to others so long as it was confined to his own property, but which he knows will be mischievous if it gets on his neighbor's, should be obliged to make good the damage which ensues if he does not succeed in confining it to his own property:' Fletcher v. Rylands, L. R. 1 Ex. 280."

*Nannie R. Collins v. Chartiers V. Gas Co.,* 131 Pa. 143, 159, 18 A. 1012, 1013, emphasizes the point that the rule protects the owner of land only from unavoidable damages to his neighbor : "Hence the practical inquiry is, first, whether the damage was necessary and unavoidable; secondly, if not, was it sufficiently obvi-

ous to have been foreseen, and also preventable by reasonable care and expenditure?" This case, in referring to other cases, points out that in most cases of percolating waters recovery has not been allowed because the damage could not have been foreseen or avoided. However, recovery was allowed for the contamination of the plaintiff's well from salt water entering it from a gas well being drilled by the defendant therein, which salt water could have been held out by casing the gas well to a greater depth. The reason for allowing recovery was that the admittance of salt water was reasonably foreseeable and was avoidable with the outlay of a small amount of money. Therein the Supreme Court said at page 160, 18 A. 1014: "Negligence in this sense is the absence of such care and regard for the rights of others as a prudent and just man would and should have in the same situation. If the plaintiff showed that the injury was plainly to be anticipated, and easily preventable with reasonable care and expense, he brought himself within the exception of all the cases from Wheatley v. Baugh to Penna. Coal Co. v. Sanderson, inclusive."

The principle is restated in the second *Collins* case, reported in 139 Pa. 111, 21 A. 147.

Although *Peter Good v. Altoona City*, 162 Pa. 493, 29 A. 741, wherein the City of Altoona emptied sewage into a stream which due to the fissures and crevices in the bottom of the stream found its way into the plaintiff's well, was decided on the basis of nuisance, it points out the distinction between natural impurities and foreign substances brought upon the land, citing *McCallum v. The Germantown Water Co.*, 54 Pa. 40; *Barclay v. The Commonwealth*, 25 Pa. 503; and *Howell v. M'Coy*, 3 Rawle 256. *Howell v. M'Coy* was decided on the basis of nuisance but stated the principle, page 268, ". . . that the erection of any thing in the upper part of a stream of water, which poisons,

corrupts, or renders it offensive and unwholesome, is actionable." In *Barclay v. The Commonwealth* the use of a barn for housing cattle in the vicinity of the spring supplying water to the town of Bedford was declared a nuisance. In *McCallum v. The Germantown Water Co.*, discharges by a carpet factory resulting in the contamination of a stream were enjoined as a nuisance.

In *Catherine Pfeiffer v. J. L. Brown*, 165 Pa. 267, 274, 30 A. 844, 845, involving the turning of salt water from an oil well over and upon adjoining land, Mr. Justice MITCHELL said: ". . . the defendant's right to injure another's land at all, to any extent, is an exception, and the burden is always upon him to bring himself within it" and, at page 275, 30 A. 846, he states: "Where conflict is irreconcilable the right to use one's own must prevail, but it can only do so without compensation where the resulting damage is not avoidable at all, or only at such expense as would be practically prohibitory."

*Schlichtkrull v. Mellon-Pollock Oil Co. (No. 1)*, 301 Pa. 553, 152 A. 829, also involved salt water entering a well as a result of gas drilling operations on adjoining land. It followed the two *Collins v. Chartiers V. Gas Co.* cases, supra, and permitted recovery, holding that there was sufficient evidence of foreseeability and reasonable avoidability to go to the jury.

However, *Ressler v. Gerlach*, 189 Pa. Superior Ct. 192, 149 A. 2d 158, although recognizing the law as expressed in the *Collins* case, held that the evidence was insufficient where an owner drilled a deep hole into which he emptied the effluent from three cesspools. The neighbor's well water showed cloudiness for three days and on notice the first owner discontinued his drainage into the hole. The well then cleared, but later went dry. During the preceding eight months the defendant had sunk four wells on his property and had succeeded in getting but one well. These drillings

showed no effect on the plaintiff's well. Nor were any tracer tests made to determine whether the drainage from defendant's property caused the contamination of the well. Although no recovery was permitted, the court nevertheless said at page 195, 149 A. 2d 160, "If the plaintiffs had shown that the injury was plainly to be anticipated they would be entitled to recover."

In *Bumbarger v. Walker,* 193 Pa. Superior Ct. 301, 164 A. 2d 144, the rule of the *Collins* case was reaffirmed when we permitted recovery for the contamination of a spring which was fed by percolating water, wherein the contamination was traced to natural drainage from a strip mining operation. The reason for allowing recovery was that the defendant had disturbed the substrata of the general area by blasting holes to establish outlets for the water which had accumulated in the diggings, whereas the water could have been pumped in a way to divert it from plaintiff's spring. In that case we confirmed many of the principles previously stated, although the ultrahazardous nature of the activity was of primary importance to the decision.

This is a subject which involves many niceties and difficulties, and for that reason we have reviewed it to a great extent but certainly not exhaustively. Much might be written to justify our decision on the basis of nuisance or the ultrahazardous nature of this project. However, we prefer to resolve it on the basis of negligence, the theory upon which the *Collins* case was also based and on which the present case was tried.

We conclude that these defendants, in bringing polluted material, particularly items such as garbage, red paint, white foamy material, etc., which might permeate the earth and resist filtration, failed to use due care in handling such material when they placed it in close proximity to plaintiffs' land and wells, of which they were aware, and into excavations they had made below the surface of the land, even below the water

level of a stream running through same, and then compressing it into the ground by running trucks over it. Since they had received general warnings about the results of this operation in this area, and had taken a "string" measurement of the distance from the wells but had nevertheless encroached on that distance, the effect on the percolating waters of this general area was reasonably foreseeable. Furthermore, they could have averted such results at little cost by placing these particularly devious and mischievous liquids elsewhere in the valley (they had 600 by 200 feet of area available). Therefore, the damage was avoidable.

Under these circumstances, the jury was justified in charging the defendants with negligence and its verdict was proper. The judgment for the defendants, notwithstanding the verdict, must be reversed and judgment entered for plaintiffs on the verdicts in their favor.

The motions for a new trial having been abandoned by the defendants, they need no further consideration.

Judgments reversed and entered for plaintiffs.

RHODES, P. J., would affirm on the opinion of JOHNSTONE, J., of the court below.