Lancaster Area Refuse Authority, Appellant, *v.* Transamerica Insurance Company.

Argued December 11, 1968. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and HANNUM, JJ.

*John I. Hartman, Jr.,* with him *Windolph, Burkholder & Hartman,* for appellant.

*B. M. Zimmerman,* with him *Zimmerman, Zimmerman, Myers & Gibbel,* for appellee.

OPINION PER CURIAM, March 20, 1969:
Judgment affirmed.

---

DISSENTING OPINION BY HOFFMAN, J.:
Judgment against Lancaster Area Refuse Authority in the amount of $7951.90 was entered in favor of two property owners whose wells were polluted due to the Authority's negligence. The judgment was affirmed by our court in *Reinhart v. Lancaster Area Refuse Authority,* 201 Pa. Superior Ct. 614, 193 A. 2d 670 (1963). The Authority is now seeking indemnification in the amount of the judgment from its insurance carrier.

At trial, the parties stipulated that "at the time the losses occurred, for which verdicts (in favor of the two property owners) were rendered, (appellant) had in force an insurance policy with (appellee). . . . The insurance policy . . . provided in part . . . (that appellee would) pay on behalf of the insured all sums which the insured shall become legally obligated to pay as dam-

ages because of injury to or destruction of property, including the loss of use thereof, caused by accident. . . . If the damages in the above cases were 'caused by accident', then judgment should be entered for (appellant). . . . If the damages . . . were not 'caused by accident', then judgment should be entered for (appellant) against (appellee)."

The lower court found that the damages from appellant's conduct were not caused by an "accident", as that word is used in the insurance policy and found for the appellee.

In this appeal, appellant attacks that finding.

The lower court based its decision upon our decision in *Reinhart* holding appellant liable to the two property owners.

The lower court wrote that "it feels that the language of the Superior Court in the suit of Reinhart v. Lancaster Area Refuse Authority, 201 Pa. Superior Ct. 614 (1963), clearly indicates that the damages to and pollution of the wells of (the two property owners) here were not the result of an accident." Specifically, the court stated that "we find the Superior Court saying in its conclusion in Reinhart as to (appellant's) failure to avoid the pollution of the wells as follows: '. . . Furthermore, they could have averted such results at little cost by placing these particularly devious and mischievous liquids elsewhere in the valley (they had 600 by 200 feet of area available). *Therefore, the damage was avoidable . . .*' (Emphasis supplied by lower court.) *If the damages were avoidable they were clearly in this court's judgment not the result of an accident as that term has been defined in numerous opinions in this State and elsewhere.*" (Emphasis added.)

The lower court also stated that "from . . . the fact that the Superior Court in Reinhart stated '. . . the

damage was avoidable' the pollution involved in this case was clearly foreseeable and avoidable, which terms are the landmark language by which 'accident' and 'occurrence' are differentiated and the expected and foreseeable occurrence herein involved is not an accident within the meaning of the insurance policy."

It is apparent that the lower court thought the adjudication of appellant's negligence in *Reinhart* was dispositive of the instant case. It held, therefore, inferentially, that if an insured is negligent and incurs liability as a result of such negligence, he cannot be indemnified by his insurance carrier who has contracted to reimburse him only for loss "caused by accident."

Such a reading, in my view, misconstrues the intent of the parties to the insurance contract.

The term "accident" as used in insurance policies has been defined by our Supreme Court as follows: "An accident, simply stated, is merely an unanticipated event; it is something which occurs not as the result of natural routine but as the culmination of forces working without design, coordination or plan." *Brenneman v. St. Paul F. & M. Ins. Co.*, 411 Pa. 409, 413, 192 A. 2d 745 (1963). Applying Pennsylvania law, the Federal District Court for the Eastern District of Pennsylvania stated that "Pennsylvania recognizes that accident (as used in an insurance policy) includes negligence." *Moffat v. Metropolitan Cas. Ins. Co. of N. Y.*, 238 F. Supp. 165 (1964). Therefore, the insured in that case, although liable to adjacent landowners for damage to their property resulting from his negligent stacking of culm banks (piles of mining wastes) which emitted noxious gas, was allowed to recover from his insurance carrier. As in the instant case, the insured followed the custom of his trade, although he proceeded to do so in a negligent manner.

In reaching its decision, the District Court relied on language in *Dilks v. Flohr Chevrolet*, 411 Pa. 425, 192 A. 2d 682 (1963) which, although construing the term "accidental fire" in a lease context, is applicable to the instant case. "Over 100 years ago . . . this court in McCarty et al. v. New York & Erie Railroad Co., 30 Pa. 247, 250, 251, considered whether 'accidental fire' included fires of negligent as well as non-negligent origin. . . . The court said: 'If accident and negligence be not opposites, we cannot regard them as identical, without confounding cause and effect. *Accident*, and its synonyms casualty and misfortune, *may proceed or result from negligence* or other cause known, or unknown . . . [Emphasis in *Moffat*]. The Court below was correct in holding that an 'accidental fire' included fires of negligent as well as non-negligent origin."

Thus, in *Moffat*, the Court held "That Moffat knew or should have known that the banks could oxidize and give off products which would cause harmful effects to property in view of the high probability of circulation by atmospheric means does not spell out conduct calculated to cause substantial damage. . . . It is clear (that the damage) . . . is not excluded from accident coverage on a liability policy."

Similarly, in a lease context, where the lessee was required to pay for damage to the premises unless "caused by accident", the Third Circuit concluded, after analyzing the Pennsylvania cases, that " 'Accident' is a word of broad scope and includes many unfortunate occurrences not anticipated in the ordinary course of affairs. The wilful act is not embraced by the word, but the negligently caused happening is understood to be an 'accident.' " *Hardwick Mutual Ins. Co. of Minn. v. Snyder, Inc.*, 242 F. 2d 64, 68 (1957). See also *Robert Hawthorne, Inc. v. Liberty Mutual Insur-*

*ance Co.*, 150 F. Supp. 829 (1957 D.C. E.D. of Pa.), aff'd, 251 F. 2d 343, 7 A.L.R. 3d 1262, Note, Liability Insurance: "Accident" or "Accidental" as Including Loss Resulting from Ordinary Negligence of Insured or his Agent.

In determining appellant's negligence in *Reinhart*, we specifically stated that we did not consider whether its conduct was intentional or reckless. Although appellant increased, to an unwarranted extent, the possibility of damage to the wells of his neighbors, it has not been shown that such damage was a natural, ordinary, probable and expected result of his actions. Such a showing, however, must be made in order to categorize the damage as not "caused by accident." Cf. *M. Schnoll & Son, Inc. v. Standard Accident Insurance Co.*, 190 Pa. Superior Ct. 360, 154 A. 2d 431 (1959), *Casper v. American Guarantee and Liability Insurance Co.*, 408 Pa. 426, 184 A. 2d 247 (1962).

Reference to the insurance policy itself clearly reflects that it was intended to cover damages arising out of the negligent acts of the insured. The policy in the case is a "Comprehensive Liability Policy (General—Automobile)" containing the standard provisions for Bodily and Property damages caused by automobile and other than by automobile. On its face, the policy is the standard form, issued to most motorists, the peculiarity in this case being, that apparently it was primarily intended to cover damage, not caused by automobile.

In the policy "Coverage C—Property Damage Liability—Automobile" provides coverage "To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages . . . caused by accident and arising out of the ownership maintenance or use of any automobile."

We have always interpreted this reference to "caused by an acident," to include damages caused by negligent operation of an automobile. *Esmond v. Liscio,* 209 Pa. Superior Ct. 200, 224 A. 2d 793 (1966); *Brower v. Employers' Liability Assurance Co., Ltd.,* 318 Pa. 440 at 442, 177 A. 826 (1935).

The immediately succeeding clause under which the claim is made in this action is entitled "Coverage D—Property Damage Liability—Except Automobile: To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages . . . caused by accident."

The words in Coverage C and D are identical except that all reference to automobile is omitted in D. Sound construction of this contractual language should not allow us to give different meanings to identical language in adjacent provisions in one contract. The words "caused by accident" in Coverage D were intended to have the same meaning as they have in Coverage C. It is well established as our Supreme Court has stated that "In general, a word used by the parties in one sense is to be interpreted as employed in the same sense throughout the writing in the absence of countervailing reasons." *Northern Liberties Gas Co. v. United Gas Improvement Co.,* 348 Pa. 433, 439, 35 A. 2d 284 (1944) quoting from 3 Williston, Contracts, (Rev. ed. 1936) section 618, p. 1780.

This reading is consistent with the intentions of an insured in signing an insurance contract. Certainly, one of his primary objectives is to be made whole for any liability incurred because of his negligent conduct. Such liability is likely whenever an insured has extensive business or commercial dealings. The insurance contract is designed to eliminate that risk of loss.

Any other interpretation would give little or no protection to the insured and would render the policy

valueless. *Rex Roofing Co. v. Lumber Mutual Casualty Ins. Co.*, 280 App. Div. 665, 116 N.Y.S. 2d 876, app. den., 281 App. Div. 744, 118 N.Y.S. 2d 732; *Bundy Tubing Co. v. Royal Indem. Co.*, 298 F. 2d 151 (6th Cir. 1962); *Iowa Mutual Ins. Co. v. Fred M. Simmons, Inc.*, 258 N.C. 69, 128 S.E. 2d 19 (1962). Had the insurance carrier thought otherwise, it is reasonable to expect that it would have specifically excluded from the contract liability arising from the insured's negligence.

Moreover, the usual presumption that insurance contracts when ambiguous must be strictly construed against the insurer militates in favor of appellant's interpretation that "caused by accident" may include damage resulting from his negligence. *Papadell v. Harleysville Mutual Casualty Co.*, 411 Pa. 214, 191 A. 2d 274 (1963).

I would vacate the judgment below and order a new trial.

MONTGOMERY and SPAULDING, JJ., join in this dissenting opinion.