## Klein v. Kay

*Edward Stock*, for plaintiff.
*W. Glen George*, for garnishee.

GREENBERG, *J.*, January 19, 1977—This matter comes before the court on a stipulation of facts submitted by counsel for plaintiffs and garnishees. Plaintiffs, Beatrice and Edward Klein, had originally commenced this action in trespass against defendant, Samuel Kay, the owner and operator of an automobile service station, alleging, inter alia, that Kay and/or his employes made certain repairs to plaintiffs' automobile in such a negligent manner that they were the proximate cause of certain personal injuries suffered by plaintiff Edward Klein, when the automobile was subsequently involved in an accident. This matter proceeded to trial before the late Honorable Thomas Reed, who, sitting without a jury, found that defendant herein had been negligent in making the aforementioned auto repairs and that this negligence had been the proximate cause of plaintiffs' personal injuries. Accordingly, that court entered a verdict in favor of plaintiff Edward Klein against defendant, Samuel Kay, in the amount of $60,000. Thereafter plaintiff properly entered judgment on the verdict.

Plaintiff subsequently encountered problems by reason of the fact that defendant, who had been insured by garnishees herein at the time the negligent acts had taken place, was no longer insured by

them at the time plaintiffs suffered their injuries and garnishees therefore disclaimed coverage under the policy of insurance. It was this disclaimer of coverage on the part of garnishees that caused this matter to come before our late colleague, the Honorable Jay H. Eiseman, and, presently, to us.

Since the court is not faced with any outstanding factual dispute, but rather with a narrow legal question only, this case was submitted upon, what is for all practical and pertinent purposes, a case stated. Based on this we make the following

## FINDINGS OF FACT

1. On February 10, 1961, defendant, Samuel Kay, was the owner and operator of an automobile service station, trading as City Line ESSO, at which time he, or his employes, made certain repairs to the automobile of plaintiff Beatrice Klein.

2. Plaintiff Edward Klein alleged that because of faulty repairs made by Kay or his employes, grease and/or oil eventually got onto the brakes of the vehicle and that they failed to work properly, causing him on March 23, 1961, to be involved in a collision in which he sustained personal injuries.

3. Plaintiff Edward Klein, and his wife, Beatrice Klein, commenced this action against defendant, Samuel Kay, by complaint in trespass alleging, inter alia, that defendant and/or his employes made the aforesaid repairs in a negligent manner and that the same were the proximate cause of the injuries suffered by plaintiff Edward Klein on March 23, 1961.

4. The case proceeded to trial before the Honorable Thomas Reed, sitting without jury, and the

court, on December 31, 1968, entered a finding adjudging that defendant, Samuel Kay, was negligent in making the said repairs and that the negligence was the proximate cause of the injuries suffered by plaintiff Edward Klein on March 23, 1961, and awarding damages to plaintiff Edward Klein in the sum of $60,000. Edward Klein subsequently, on February 13, 1969, entered judgment on the award in the aforesaid amount.

5. On February 10, 1961, when the negligent repairs were made, there existed in full force and effect a garage liability policy No. AG54285 issued by the United States Fire Insurance Company, garnishee, to defendant, Samuel Kay. In the said policy, the garnishee agreed with defendant, Samuel Kay, under "Insuring Agreement 1, Coverage A—Bodily Injury Liability:

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident, and arising out of the hazards hereinafter defined."

6. The said policy under "B, Definition of Hazards, Division I—Premises (Operations—Automobiles)" states as follows:

"The ownership, maintenance or use of the premises for the purpose of an automobile sales agency, repair shop, service station, storage garage, or public parking place, and all operations necessary or incidental thereto . . ."

The said policy under "Conditions" states in part as follows:

"Cancellation. This policy may be cancelled by the named insured by surrendering thereof to the company or any of its authorized agency, or by mailing to the company written notice stating when thereafter the cancellation shall be effective . . ."

Said policy, under "Definition of Hazards, V" states as follows:

"Policy, Territory. This policy applies only to accidents which occur during the policy period within the United States of America, its territories or possessions, or Canada."

7. On March 1, 1961, Policy AG54285 was cancelled by original defendant herein, Samuel Kay, in accordance with section 21 of conditions aforementioned. On this day Samuel Kay went out of business. The initial premium for said policy was $667.83 and the pro-rated return premium credited to Kay by garnishee was $641.30.

8. The first notice received by garnishee of the claim was on February 2, 1962, at which time defendant advised garnishee's agent by telephone that he had received a complaint in the mail alleging accident of March 23, 1961. Garnishee immediately disclaimed coverage since the policy had been cancelled by defendant on March 1, 1961.

## DISCUSSION

The single issue before this court is whether or not the garage liability policy, which was in full

force and effect at the time the negligent repairs were made to plaintiffs' automobile, remained effective with respect to injuries occurring as a result of the aforementioned negligence after the policy had been cancelled.

Occurrences of the kind involved here are unusual, since in most instances, the wrongful act which causes the accident or injury and the accident or injury occur simultaneously, or within a short time of each other. There is therefore usually no reason to differentiate the negligent act from the resulting injury, since both will ordinarily either be within or without the policy term. In the present case, however, act and injury are separated by a time interval, during which the policy was cancelled by defendant. While the situation presented here was probably not anticipated by any of the parties at the time the insurance contract was entered into, we must decide which of the competing positions more closely reflects their intentions when the agreement was made and more nearly accords with the current status of the law. It is agreed by the parties and the court that our construction of the word "accident" as used in the policy will in large measure control that decision.

Under "Insuring Agreement I, Coverage A —Bodily Injury Liability," the insurance carrier agreed to pay all such sums as it might become legally obligated to pay on behalf of its insured because of injuries ". . . caused by accident, and arising out of the hazards hereinafter defined." Said definition of hazards included any activities related to the operation of a service station on the premises. Section V of the policy provided that "[t]his policy applies only to accidents which occur during the policy period . . ."

The policy does not itself define what is meant by an "accident," but this is not the first time our courts have had to construe that particular word in the context of a liability insurance policy. The question of whether an "accident" comprehends the negligent act or omission itself, or whether it may properly be understood only as referring to that physical event inflicting injury or damage, was squarely presented to the court in Lancaster Area Refuse Authority v. Transamerica Insurance Co., 437 Pa. 493, 263 A. 2d 368 (1970). Our Supreme Court there formally adopted the position, suggested in other cases, that harm which is caused by negligence may also be "caused by accident" within the intendment of an insurance contract: Brenneman v. St. Paul Fire & Marine Insurance Co., 411 Pa. 409, 192 A. 2d 745 (1963); Dilks v. Flohr Chevrolet, 411 Pa. 425, 192 A. 2d 682 (1963); Moffat v. Metropolitan Insurance Co. of New York, 238 F. Supp. 165 (M.D.Pa. 1964). In reaching this conclusion the court adopted the reasoning of the dissenting opinion in the Superior Court entered at 214 Pa. Superior Ct. 80 (1969). Since it so well illuminates some of the issues implicit in our decision here, we set forth below a section of that opinion:

"This reading [interpreting 'accident' to include negligence] is consistent with the intentions of an insured in signing an insurance contract. Certainly, one of his primary objectives is to be made whole for any liability incurred because of his negligent conduct. Such liability is likely whenever an insured has extensive business or commercial dealings. The insurance contract is designed to eliminate that risk of loss."

"Any other interpretation would give little or no protection to the insured and would render the policy valueless. [Citations omitted.] Had the insurance carrier thought otherwise, it is reasonable to expect that it would have specifically excluded from the contract liability arising from the insured's negligence." Lancaster Area Refuse Authority v. Transamerica Insurance Co., 214 Pa. Superior Ct. 80, 86-87, 251 A. 2d 739 (1969).

This excellent analysis applies here with equal validity. Defendant, the garage owner, purchased an insurance policy for the specific purpose of obtaining indemnification for any sums he might become obligated to pay arising from the operation of his service station. Protection against claims based upon negligent repair of automobiles was, of course, a primary consideration in his obtaining insurance coverage. Defendant expected that such protection against improper repairs would be co-extensive with the term of the policy, and would remain effective so long as the premiums due were regularly paid. We believe the legitimate expectations of defendant would be frustrated were we to accept garnishee's contention that an "accident" should be narrowly confined to incidents involving physical impact, with the result that defendant's liability arising out of the negligent repairs but not occurring until after the policy had been cancelled would not be effectively insured against.

Had the carrier believed that the construction now argued for was most appropriate, then it should have written a different policy. It would not have been a difficult matter for the insurer to specifically exclude from coverage liability arising from an insured risk but not occurring until after

the policy had expired. Not having memorialized this position at the time of agreement, the carrier cannot now realistically contend that the beneficiaries of the insurance proceeds are bound by the troublesome interpretation presently advanced. The carrier wrote the policy, and it must live with it.

Moreover, sound policy considerations mitigate strongly against our acceptance of a restrictive interpretation of "accident" as employed in the instant policy. Such a construction would require an individual to maintain insurance coverage even where, as here, he has ceased the operation of his business, on the off-chance that his former activities might yet be determined by a court to be the cause of some injury occurring several years later. The confusion and uncertainty such a state of affairs would inevitably produce is the antithesis of the safety and security insurance is designed to provide.

We recognize that the decision in Lancaster Area Refuse Authority, supra, upon which we rely, was predicated upon a somewhat different set of facts than in the instant matter, there being no question of a time interval separating the negligent act from the resultant injury. And we are cognizant also of the fact that a number of other jurisdictions confronted with the act-injury dichotomy in the context of an intervening policy termination have taken a position contrary to the one we adopt here. See Annotation 57 A.L.R. 2d 1385 and later case service. Nevertheless, we are persuaded that the rationale advanced in Lancaster as well as considerations of public policy favor an interpretation of "accident" that would encompass negligent acts occurring within the policy term and any con-

sequent damage or injury resulting therefrom. We find support for this view not only in the principles of law and equity heretofore recited, but also in the maxim that ambiguous or uncertain language in an insurance policy is to be construed liberally in favor of the insured: Hionis v. Northern Mutual Insurance Co., 230 Pa. Superior Ct. 511, 327 A. 2d 363 (1974); Slate Construction Co. v. Bituminous Casualty Corp., 228 Pa. Superior Ct. 1, 323 A. 2d 167 (1974).

We therefore find that the word "accident" as employed in the instant insurance policy has reference to both the negligent repairs performed by defendant and/or his employes on February 10, 1961, and so also to the injuries suffered by plaintiffs on March 23, 1961, as a result of the aforesaid repairs. Thus, garnishee, United States Fire Insurance Company, was obligated to pay on behalf of defendant the amount of the judgment entered against him not in excess of its policy limits, and interest thereon from date of judgment. The policy's limits of liability provide for a maximum payment of $50,000 for each person sustaining bodily injuries. Garnishee is therefore liable for that amount, plus interest accrued from the date of entry of judgment on the verdict.

Order entered accordingly.

## ORDER

And now, January 19, 1977, it is ordered and decreed that judgment be entered in favor of plaintiffs, Edward Klein and Beatrice Klein, and against garnishees, United States Fire Insurance Co. and

Crum & Forster Insurance Co., in the amount of $50,000, plus interest accrued thereon from the date of entry of judgment on the verdict.