**Rob-Bern Associates, Inc. v. Chesky**

*Harold V. Fergus, Jr.,* for plaintiff.
*Dennis G. Fritsch,* for garnishee.

RODGERS, *J.,* November 5, 1984—On August 29, 1980, plaintiff, Rob-Bern Associates, Inc., secured a default judgment in the amount of $24,294 against Jack R. Chesky and Jack L. Chesky, d/b/a C & C Steel Erectors, for negligence in the performance, by defendants, of its sub-contract to install a roof on building no. 50 of the McGraw-Edison plant in Canonsburg, Pa., in September 1978.

Plaintiff, Rob-Bern, was the general contractor with McGraw-Edison to install the roof on building 50, and on August 4, 1978, had entered into a subcontract with defendant, Chesky.

By agreement of McGraw-Edison, Rob-Bern and Chesky, Chesky transported the necessary roofing materials, including corrugated steel sheets, over the roof of an adjoining building, no. 40 of McGraw-Edison, causing damage to the roof of building no. 40.

Defendant, Chesky, was insured by a general liability policy issued by the garnishee, Rockwood Insurance Company, for contractors' property damage liability, but in the execution proceedings instituted by plaintiff, Rob-Bern, Rockwood has refused payment to plaintiff on the grounds that the matter complained of was not an "occurrence" or "accident" from the standpoint of the insured, Chesky, and that, therefore, there was no liability coverage under the terms of his policy.

For reasons hereinafter stated, this court finds that the garnishee's general liability policy afforded coverage in this matter, and finds in favor of plaintiff, Rob-Bern, and against defendant garnishee, Rockwood, in the amount of $24,294, together with interest at six percent per annum from August 29, 1980.

The policy provision in question reads as follows:

" 'occurrence' means an accident, including continuous or repeated exposre to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured;"

After a nonjury trial in this matter, the court finds as follows:

On August 4, 1978, Rob-Bern entered into a contract with defendant, Chesky, to install a new roof

over the existing roof on building no. 50 of the McGraw-Edison plant in Canonsburg, Pa. The roof on building 50 was about 75 feet wide and 500 feet long, and the roofing material to be used included some corrugated steel sheets about 30 to 35 feet long and of considerable weight.

Defendant, Chesky, commenced work on its subcontract about the first day of September, 1978. Originally, some of the roofing material was hauled up through a sky-light or opening in the roof of building 50. However, because of the dimensions of some of the building material, and interference with McGraw-Edison's work, it was agreed that Chesky would transport the roofing material across an adjacent flat roof of building 40, which was about 28 feet wide and 575 feet long.

The roof on building 40 was a four-ply tarred or asphalt, felt, built-up roof, laid over a two and one-half inch gypsum deck, covered with slag or gravel. Chesky transported the roofing material across the roof of building 40 by using a 14 horsepower Bolens garden tractor, pulling a steel dolly on rubber wheels, upon which the bundles of corrugated steel sheets were placed and slid across the roof.

Sometime after Chesky commenced transporting the roofing materials, in September 1978, McGraw-Edison notified Chesky, and Rob-Bern, that Chesky employees had damaged the roof of building 40.

Richard Lawniczak, a sales representative of Rob-Bern, and Jack R. Chesky, inspected the roof after receiving the complaint of McGraw-Edison, and saw a hole in the roof which had cracked the gypsum, and they both expressed the opinion, that the fracture or crack they observed, was caused by an overload of the steel sheets on the dolly. The Chesky employees were then instructed to transport not more than six to eight sheets at one time. They both

claimed that the entire damage to the roof of building 40, with the exception of some superficial injury to the gravel cover, which did not impair the integrity of the roof, was caused by this single incident, when the overload on the steel dolly had caused the wheels of the dolly to penetrate the roof.

Until this incident occurred, they testified that they did not know the decking was made of gypsum, had assumed that it was steel; and in that event, there would have been no damage to the roof; and that there was no further damage after reducing the weight of the load of the roofing materials being transported across the roof.

However, Charles E. Staude, a roofing contractor, testified on behalf of the garnishee, Rockwood, that he had inspected the roof of building 40 on November 13, 1978; that he saw slag displaced over practically the entire roof area, and that there was damage to the asphalt surface underneath that could not be seen; that from the underside, he observed about 32 fractures in the roof decking; that these fractures occurred in an area about 16 to 18 feet wide for most of the length of the roof.

The parties stipulated that the damage to the roof was caused by the actions of Chesky in moving roofing materials across the roof. The garnishee did not dispute the amount expended by Rob-Bern in making the necessary repairs, and stipulated to the amount of the default judgment entered by Rob-Bern against Chesky.

The estimate made by Mr. Staude shows that most of the cost of the repair to the roof of building 40 was incurred in removing the slag or gravel, coating the entire roof with pitch, and then replacing the slag; and in labor and material for repairing the holes or cracks in the roof.

This court finds that the damage to the asphalt, the felt covering and the gypsum decking was over too large an area to be explained by the single incident observed by Mr. Lawniczak and Mr. Chesky.

However, this court further finds that except for the nominal injury to the gravel cover, which did not impair the structural or functional integrity of the roof, and except for the damage observed by Mr. Lawniczak and Mr. Chesky on the one occasion, the damage to the asphalt, felt and gypsum was not observed or noted by Chesky or his employees, and that the damage to the roof was neither intended nor expected by Chesky. Indeed, all parties agree that the damage was not intentional; Mr. Staude, on behalf of Rockwood, ascribed the damage to the negligence of Chesky in not placing wooden planks or plywood over the slag cover before transporting the roofing materials; and by Mr. Lawniczak and Mr. Chesky, to an inadvertent overload, because Chesky was not aware that the decking was made of gypsum, instead of steel.

Rockwood argues on the basis of Chesky's testimony, that since he was concerned about a general risk of penetrating the roof before moving the roofing materials, and because he admitted that in any event some superficial damage had been done to the gravel cover from sliding the steel sheets over it, that the damage was expected on the part of Chesky. Hence, there is no liability coverage, even though the actions of his employees were negligent, rather than intentional.

Chesky claims that the entire damage was done as a result of a single incident, and caused by an overload on the steel dolly; that no further damage was done after the weight of the loads was reduced.

This court has not accepted Chesky's claim that the entire damage was done on a single trip, but

nevertheless finds that the damage caused by Chesky's employees was neither intended nor expected by them. The court finds that the superficial damage alluded to by Mr. Chesky was merely to the gravel, which would not impair the integrity of the roof.

The court finds this case is governed by Lancaster Area Refuse Authority v. Transamerican Insurance Company, 437 Pa. 493, 263 A.2d 368 (1970), adopting the dissenting opinion in the same case at 214 Pa. Super. 80, 251 A.2d 739 (1969). In the Lancaster case, judgment had been entered against the Lancaster Area Refuse Authority in favor of two property owners whose wells were polluted due to the authority's negligence. The authority sought indemnification in the amount of the judgments from its insurance carrier, who refused coverage on the grounds that the damages were not caused by accident.

The trial court had entered judgment n.o.v. for the insurance company on the grounds that the refuse authority could have avoided damage to the property owners' wells by placing the polluting liquids in another part of its landfill, and hence the damages were avoidable and were not caused by accident.

In reversing judgment, the Supreme Court adopted the opinion of Judge Hoffman, which said in part:

"The term 'accident' as used in insurance policies has been defined by our Supreme Court as follows: 'An accident, simply stated, is merely an unanticipated event; it is something which occurs not as the result of natural routine but as the culmination of forces working without design, coordination or plan.' Brenneman v. St. Paul F. & M. Ins. Co., 441 Pa. 409, 413, 192 A.2d 745 (1963). Apply-

ing Pennsylvania law, the Federal District Court for the Eastern District of Pennsylvania stated that 'Pennsylvania recognizes that accident (as used in an insurance policy) includes negligence.' Moffat v. Metropolitan Cas. Ins. Co. of N.Y., 238 F. Supp. 165 (1964)."

"In determining appellant's negligence in Reinhart, we specifically stated that we did not consider whether its conduct was intentional or reckless. Although appellant increased, to an unwarranted extent, the possibility of damage to the wells of his neighbors, it has not been shown that such damage was a natural, ordinary, probable and expected result of his actions. Such a showing, however, must be made in order to categorize the damage as not 'caused by accident.' Cf. M. Schnoll & Son, Inc. v. Standard Accident Insurance Co., 190 Pa. Super. 360, 154 A.2d 431 (1959), Casper v. American Guarantee and Liability Insurance Co., 408 Pa. 426, 184 A.2d 247 (1962)." 214 Pa. Super. at 83, 85.

The Schnoll case, upon which the garnishee Rockwood relies is clearly distinguishable. Schnoll, a painting contractor, during the course of painting wood gables on a large number of houses in a building development, caused dripping paint to be splashed on the shingle siding of some 52 homes. The evidence was that the dripping of the paint was an expected occurrence in the course of operation; that Schnoll knew such drippings were going to occur because he tried to avoid harm by nailing drop sheets and constructing scaffolds; that Schnoll was aware that the paint would drip, and continued to let the shingles be stained by the paint drops.

In the case at bar, the damage to the roof was not the natural, ordinary, probable and expected result of transporting the roofing materials across the roof.

Furthermore, the fact that the damages were caused on more than one trip across the roof is of no moment.

In the case of the Beryllium Corporation v. American Mutual Liability Insurance Company, 223 F.2d 71 (1955), the Beryllim Corporation brought action on a comprehensive general liability insurance policy for the amounts paid by the corporation in the settlement of suits against it for the death of the wife of one of its employees, and the daughter of another such employee, from beryllium poisoning, contracted through laundering such employees' work clothes over a period of many years. Defendant refused to pay on the grounds that the injuries were not caused by accident on the theory that "accident" means one isolated occurrence. The Third Circuit, in interpreting Pennsylvania law, held that "accident" is not confined to a single isolated instance, and that the deaths in question were accidental as that term is commonly understood.

Furthermore, the definition of "occurrence" in the Rockwood policy includes "continuous or repeated exposure to conditions". See also Rex Roofing Company v. Lumber Mutual Casualty Insurance Company, 280 App. Div. 665, 116 N.Y.S. 2d 876 (1952) cited with approval in the Lancaster case, supra, 214 Pa. Super. at 87.

## DECISION OF THE COURT

The court finds in favor of plaintiff, Rob-Bern Associates, Inc., and against the garnishee, Rockwood Insurance Company, in the amount of $24,294, together with interest at six percent per annum from August 29, 1980.

If post-trial motions are not filed within ten days after notice of this decision, the prothonotary, upon

praecipe, shall enter judgment in accordance with the court's decision.